STATE on the relation of JAMES A. BARNES *v.* WM. T. LEWIS.

Where A was appointed guardian of B by a County Court, of which at the time of his appointment he was an acting Justice: *Held*, that the fact that he was so acting, did not render nugatory his appointment, so as to discharge C, a surety on the guardian bond, from liability to the ward.

Where A signed a guardian bond as surety, and at the time of signing the same the name of B appeared in the body of the bond also as surety, though he had not signed the bond, and never did: *Held*, in an action against A as surety by the ward, evidence was not admissible to show that A was induced to sign the bond as surety, by the statement of C, the guardian, that the said B would also sign as surety.

(The cases of *State* v. *Pool*, 5 Ired. 105; *Brinegar* v. *Chaffin*, 3 Dev. 108; and *Hayes* v. *Askew*, 5 Jones 63, cited and approved.)

CIVIL ACTION, on a guardian bond, tried before *Moore, J.*, at Spring Term, 1874, EDGECOMBE Superior Court.

This action was brought against the defendant as surety on a bond executed by John F. Speight, as guardian of his relator the execution of the bond not being denied.

On the trial, the defendant proposed to prove by himself, that as an inducement to his execution of the bond, John F. Speight stated that one Jesse H. Powell would also sign the bond as surety, and upon that promise and understanding defendant agreed to sign the same as surety, and when he signed the same in the presence of the Court, the bond was filled up, and on the face thereof the name of Powell appeared as one of the sureties, and defendant had no knowledge that Powell did not sign the same as surety, until about four years ago.

The counsel for the relator objected to the admission of this evidence, and the Court sustained the objection, and defendant excepted.

It appeared from the evidence that John F. Speight, the guardian of the relator, and two other Justices, constituted the Court at the time of the appointment of Speight as guar-

dian, and the execution of the bond. The defendant insisted, that for that reason the appointment of the guardian and the bond was void.

The Court held that the defendant was liable and gave judgment for the plaintiff; thereupon the defendant appealed.

*Battle & Son* and *J. W. Johnston,* for appellant.
*Howard & Perry,* and *D. Battle,* contra.

RODMAN, J. The defendant is sued as surety for one Speight, on a bond given by Speight as guardian for the relator. He makes two defences :

1. When Speight was appointed guardian, the County Court was composed of himself and two other justices of the peace for the county of Edgecombe. In order to have made a Court, Speight must necessarily have taken a part in making the appointment. The argument is that the appointment was void, and that consequently the bond is void also.

There can be no doubt of the general proposition that no man is allowed to act as Judge in a matter in which he has an interest, except to make such formal orders as may be necessary in order to continue the case, or to send it to some other Court competent to try it. *Norfleet* v. ———, 72 N. C. Rep.; Freeman on Judgments, secs. 144, 148.

With that exception the judgments of a Judge who has an interest are said to be void.

But in all the cases cited to illustrate this proposition, which I have been able to find, the question has occurred between the original parties to the judgment, or their privies. Obviously the same reasons would not apply, or, at least, would not apply with equal force, when innocent third persons had acquired rights under the judgment.

But it is unnecessary to pursue the investigation of this subject on general principles. We consider that the liability of the defendant is established by the act of 1842, Revised Code, chap. 78, sec. 9, which enacts, in effect, that every bond

taken under the sanction of a Court of Record for the perform-ance of any duty belonging to any office, &c., shall be valid, notwithstanding any irregularity or invalidity in the conferring of the office. *State* v. *Pool*, 5 Ire., 105.

Independently of this statute, the defendant is estopped to deny that Speight was rightfully appointed guardian of the relator. It is so recited in the bond, and it is established law that although a mere *general* recital in the body of a bond does not create an estoppel, yet a *particular* recital, that is, of such facts as were the inducement moving to the execution of the bond, does. *Hays* v. *Askew*, 5 Jones, 63; Bigelow on Es-toppel, 295, 313   *Cutter* v. *Dickinson*, 8 Rik. 386; *Bruce* v. *United States*, 17 How, 437.

2. The defendant "proposed to prove by himself that the said John F. Speight, now dead, as an inducement to his sig-nature of the bond as surety, stated that one Jesse H. Powell would also sign the bond as surety, and that upon that promise and understanding defendant agreed to sign the same as surety, and that when he signed the same in presence of the Court, the bond was filled up, and on the face thereof, the name of said Powell appeared as one of the sureties, and defendant had no knowledge that said Powell did not sign the same as surety, until about four years ago." The Court refused to hear the testimony, and defendant excepted.

The propriety of the rejection of this testimony depends en-tirely on its materiality. If the facts proposed to be proved, would have made a sufficient defence, either to the whole, or to any part of the relator's claim, the testimony was material, and should have been received. If however, it would not have been a defence, it was immaterial, and was properly re-jected.

The authorities bearing more or less directly upon the ques-tion thus presented are numerous, and not always consistent, and I have not any where met with an attempt to classify them, and to extract the general rules which they establish. The task would be a laborious, and if fairly done, an useful

one. The members of this Court however have no time for such tasks. All that we shall undertake to do, will be to distinguish certain classes of cases from the present, and to state the grounds of our decision in the present case.

An official bond is presented to a person who is solicited to sign it as a surety, and the names of certain other persons are recited in the body of the bond, and appear signed to it, and the person solicited to sign, believes that their signatures are genuine, when, as afterwards appears, they are forged. The surety is not bound. *Luly* v. *The People,* 27 Ill. 173. *Chamberlin* v. *Beaver,* 3 Bush. (Ky.,) 561. But *contra, Bigelow* v. *Coonegys,* 5 Ohio, 256.

2. If it is agreed *between the parties* to an obligation that it shall not be valid unless executed by all of certain persons, it is not valid until so executed. Thus, generally expressed, the rule is unquestionable; but it is subject to be controlled; as for example, if it be afterwards delivered absolutely to the obligee by a part of the proposed obligors only. *State* v. *Peck,* 53 Maine, 284. And the older authorities are, that it cannot be delivered to the *obligee,* as an *escrow.*

In the case of an official bond taken under the authority of a Court, probably a notice *to the Court,* assented to by it, that a surety had signed the bond and left it with the clerk, (and *a fortiori* with another person,) to be delivered on condition only, would defeat a delivery before performance of the condition. It may be doubted whether notice to the clerk, who is not the agent of the Court for such purpose, and has no authority to assent to any such condition, would have any effect. But this question need not be discussed, as it will appear in the present case that no such notice was given to either the Court or its clerk.

3. If the delivery of an official bond made not to the officer authorized to receive it, but to the principal obligor, on the condition that it is not to be delivered until certain other persons named in the body of the bond, shall execute it, and the principal obligor nevertheless delivers it to the agent of the

obligee, without execution by such other persons, and without other notice of the condition than is to be implied from the names of such persons appearing in the body of it, the sureties who have signed are not bound. *Rawlins* v. *United States*, 4 Cranch, 219. This case has been several times questioned, and there are decisions opposed to it, on the ground that the obligee could not be bound by a condition of which he had no notice. But it may, perhaps, be supported, on the ground that the appearance in the body of the bond of the names of persons who had not signed, was of itself notice that the instrument was incomplete, and its delivery by the *principal obligor alone* was unauthorized. Had it been delivered by the sureties who signed, the case would have been different. *Sharp* v. *United States*, 4 Watts, 21, is to the like effect, with the difference, that in that case, the act of Congress under which the bond was given, required *two* sureties, which might help both to induce the one who signed to believe that it would not be taken without the signature of the other, and also to notify the receiving officer that it was incomplete.

*Pepper* v. *State*, 22 Ind., 399, may be referred to in this connexion, although as that volume of the Indiana Reports is not accessible to us, we can only refer to it.

To return to our case. The following entry appears of record in Edgecombe County Court, at November Term, 1856, at which the bond sued on was given : "John F. Speight is appointed guardian for James A. Barnes, (the relator,) and enters into bond in the sum of $15,000, with William T. Lewis, (the defendant,) as his surety."

It must be inferred from this that Speight never offered to the Court any other surety than the defendant. This the defendant might have known upon inquiry, and his ignorance of it proves at least some degree of negligence.

This record also establishes that the instrument was delivered by Speight and the defendant absolutely as their deed, without qualification or condition. If the defendant then intended that the delivery should be conditioned on Powell's

signature, a prudent caution, as well as fair dealing towards the ward, required him then to have stated such condition to the Court or at least to the Clerk. It may be doubted, as was said before, whether such a statement to the Clerk would have been effectual, as the Clerk is not authorized to receive *escrows.* But that question is immaterial, as the instrument in question was not so delivered. It is contended, however, that the fact that Powell's name as a surety appeared in the body of the bond, was of itself notice that the instrument was incomplete without his signature, and that the delivery was conditional. It will be seen that this proposition is not supported by the cases of *Paulins* v. *U. S.*, and *Sharp* v. *U. S.*, because in those cases the absolute delivery was not made by the surety, but by the principal alone, in the absence of and contrary to the instructions of the surety.

It is not supported by any case that has fallen under our notice. It may be admitted that the circumstance relied on is, ordinarily, and in the absence of any circumstances to control it, proof of notice that the instrument is at the time incomplete. But an absolute delivery as a deed by a party executing it is incompatible with a delivery on condition, and supersedes as to him any previous notice of incompleteness. It estops the party from any defence inconsistent with it. *Adams* v. *Burns*, 12 Mass., 139 ; *Cutter* v. *Whittemore*, 10 Mass., 442 ; *Scott* v. *Whipple*, 5 Greenl., 396 ; *Haskins* v. *Lombard*, 16 Me., 140 ; *State* v. *Peck*, 53 Me., 284 ; *Bigilow* v. *Cornegys*, 5 Ohio, 256.

The Clerk, upon the unqualified delivery to him of the bond, executed by all the persons whose execution was required by the order of the Court, might reasonably believe, that if an intention that Powell also should sign had ever existed, it had been abandoned. In this connection we refer to the judicious remarks of the Court in *Luly* v. *People*, 27 Ill. 173, in which the surety had been induced to sign, by the forgery of an antecedent name.

" By a fraud practiced on the defendant, by means of the

commission of a high crime, he was made to assume a different and greater liability than he intended, or supposed he was assuming. It is not like the case where the surety, when he signs the bond, is assured and made to believe that others will afterwards sign it. In that case he acts upon the simple assurance that another will do an act which he knows may be defeated or prevented by various accidents, *and he must therefore take the risk of such assurance being fulfilled.*"

As the case stands, the defendant confides in Speight; his condition that Powell also should sign, is communicated to Speight alone; he fails to use ordinary caution either to protect himself or to protect the relator. Clearly this was negligence. By his negligence, the defendant enabled Speight to become possessed of the *indicia* of a guardian, and to obtain into his possession the property of the relator, which he wastes, and then dies insolvent. No fraud is imputed to the defendant: but no principle of equity is better established than that where one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss, must sustain it.

This doctrine is not confined to negotiable securities, but is of general application, and it would seem to apply with especial force to the bonds of administrators and guardians.

There is no error in the judgment below.

PER CURIAM.                    Judgment affirmed.