FARMERS BANK OF ROXBORO v. HUNT, PAYLOR & CO., MRS. EMMA J. JAMES and R. L. MITCHELL.

(Decided March 14, 1899).

*Promissory Note—Surety—Renewal—Release.*

Where the principal upon a note, discounted at bank, with three sureties, being desirous of renewing for a larger amount, agrees with the bank to offer the same three sureties, but is only able to obtain the signatures of two of them, and that upon the promise to each that the note would not be used without the signature of the third, of which promise the bank had no notice, and upon the refusal of the third was induced to discount upon the signatures of the two: *Held,* that the two sureties are liable, and are not released by reason of the broken promise of their principal.

CIVIL ACTION upon a promissory note, upon which the firm of Hunt, Paylor & Co. was principal, and the other defendants were sureties, tried before *Timberlake, J.,* at August Term, 1898, of PERSON Superior Court. The principal obligor set up no defence. The sureties controverted their liability. There was verdict and judgment against them also, and they appealed. The circumstances of avoidance relied upon by them are stated in the opinion.

*Messrs. Boone & Bryant,* for defendants (appellants).
*Mr. John W. Graham,* for plaintiff.

MONTGOMERY, J.   This action was brought for the re-
covery of the amount due upon a promissory note made by
the defendants to the plaintiff.   The defendants, Hunt and
Paylor, the principal debtors, made no defence.   The defend-
ants, James and Mitchell, the sureties, in their answer
averred that in November, 1895, Hunt and Paylor, doing
business as Hunt, Paylor & Co., desired to borrow money
from the plaintiff, to be used in their business, and proposed
to the plaintiff to give as sureties, to secure the note, the de-
fendants James and Mitchell, and also one S. P. Williams;
that Paylor came to the defndants James and Mitchell and
secured their signatures to a note, blank as to amount, date,
time of maturity and name of obligors; that the note was,
by agreement with Paylor, not to be used or discounted
until it was signed by Williams; that after the note was
signed by the defendants it was taken to the plaintiff, who
was then notified of the conditions under which the defend-
ants had executed it; and that notwithstanding the refusal
of Williams to sign the note, the plaintiff, aware of all the
facts, accepted it in payment of a debt due by Hunt, Paylor
& Co. to the plaintiff, or discounted the same for their ac-
count.

On the trial the defendant Mitchell testified that Paylor
brought the note to him, in blank as to date, amount, time of
maturity and name of obligors; that he signed it and that
at that time there was the name of no other obligor to the
note; that Paylor stated to him that the note was to be in
the sum of one thousand dollars and would be signed by
Mrs. James, the other defendant, and also by S. P. Williams,
as sureties, and that that would be done before it was used
in the bank; that the witnesses signed with that understand-
ing with Paylor; that he lived eighteen miles from Roxboro,
the residence of both the plaintiff and Williams.

Upon cross-examination the witness stated that he had had no conversation or agreement or understanding with the plaintiff in regard to the note, or any agreement with the plaintiff that the note would not be discounted in the event that Williams did not sign it.

Mrs. James testified that when she signed the note, Paylor made the same statements to her that he made to Mitchell, and that Mitchell and Williams would sign the note as sureties with her.   She testified further that she had had no agreement with the bank about the manner of the execution of the note or of its discount.

The issues submitted to the jury were (1.) Were defendants Mrs. E. J. James and R. L. Mitchell sureties to the note sued on?  (2.) Did Mrs. E. J. James and R. L. Mitchell sign the note sued on, with the agreement or understanding that the same was not to be discounted by the Farmer's Bank until and unless S. P. Williams also signed the same?   (3.) Did Farmers' Bank have notice of said agreement or condition.

His Honor instructed the jury that, if they believed the evidence, to answer the first and second issues "Yes" and the third issue "No."

To the holding that there was not sufficient evidence of knowledge of the agreement on the part of the plaintiff, and to the instruction to answer the third issue "No," if they believed the evidence, the defendants excepted.   The execution of the note by the defendants James and Mitchell was admitted by them.   The burden of proof was then upon them to make good the matters which they had set up in avoidance in their answer.   There was not a *scintilla* of evidence that the plaintiff had actual knowledge of the agreement and understanding which the defendants Mitchell and James testified that they had had with Paylor, when they signed the

note. But it was urged by the defendants' counsel that the testimony of the defendant Paylor tended to prove that the plaintiff had constructive notice of the understanding between Paylor and the defendants James and Mitchell, derived through a conversation with Paylor when he delivered the note to the plaintiff and had it discounted. We can see nothing in Paylor's testimony that tends to show constructive notice on the part of plaintiff as to what was done or said at the time of the signing of the note by the defendants James and Mitchelll. All of the defendants in this action, together with Williams, owed a debt of five hundred dollars by note, to the plaintiff; and the defendants Hunt and Paylor owed more by their over-drafts, and wished still further accommodations. The plaintiff wished that matter settled, and informed Hunt and Paylor that they must arrange to get the money. The cashier of the plaintiff's bank was asked by Paylor if a note signed like the first one would be sufficient, and he was told that it would be. The note sued on for one thousand dollars was brought to the bank of the plaintiff with the blanks properly filled in, signed by Hunt and Paylor, and by the defendants James and Mitchell as sureties, with the statement by Paylor that Williams would sign it as additional surety. Williams refused to sign the note and his refusal was communicated to the plaintiff. Thereupon Paylor said that the note was good for the amount as it was, and the cashier of the bank said he thought so, and the note was discounted. There was nothing suspicious about that transaction; nothing about it calculated to put the plaintiff upon inquiry as to why Williams had not signed the note. Paylor had not intimated that there was any agreement or understanding between himself and James and Mitchell that Williams should sign the note before it was used at the bank. The officers of the bank had simply said in the begin-

ning that the three, James, Mitchell and Williams, would be sufficient security upon the note, and that, at the instance of Paylor himself. When Williams refused to sign the note the plaintiff thought it good without his signature and discounted it. The transaction seems to be open and fair, and so far as the evidence goes there were no suspicious circumstances attending the execution of the note which ever came to the knowledge of the plaintiff.

The plaintiff, then, had neither actual nor constructive notice of the alleged agreement between Paylor with the other defendants James and Mitchell. The question then is, is the note binding on the defendants Jones and Mitchell, the sureties, who signed the note under an agreement with one of the principals that he was not to use it with the plaintiff unless he procured the signature of Williams also?

We are of the opinion that they are liable upon the note. The precise point was before the Court in *Gwyn v. Patterson,* 72 N. C., 189. In the opinion in that case is quoted, with approval, the point decided in *Millett v. Parker,* 2 Metc., 608: "One who signs a covenant as surety upon the conditions and agreement between him and his principal that is not to be binding upon him or delivered to the covenantee unless another person should sign it, as surety, is bound thereby, although the principal to whom he entrusted it delivered it to the covenantee without a compliance with such a condition, of which and its breach the latter had had no notice." To the same effect is the decision in *State v. Lewis,* 73 N. C., 138. The defendant cited us to several decided cases like that of *Rawlings v. U. S.,* 4 Cranch, 219, in which it was held that, where a surety signed a bond on which was written the name of another person who was to sign the bond, but who failed to do so, the sureties who did sign were released and not liable. In the case of *State v. Barnes, supra,*

it was said of the decision in *Rawlings v. U. S., supra,* it might "perhaps be supported on the ground that the appearance in the body of the bond of the names of persons who had not signed was of itself notice that the instrument was incomplete, and its delivery by the principal obligor alone was unauthorized." But such a case as that last referred to is not before us, and we are not called upon to make a decision upon it to decide the point.

This may be a hard case on the defendants James and Mitchell, but it will be a still harder case on the plaintiff if it should be subjected to the loss of its money lent in good faith upon a note perfect in form and with nothing about the matter to excite suspicion, or to put it on inquiry. From the statements of the defendants James and Mitchell, they gave to Paylor their confidence, and it was misplaced. Loss has ensued on account of this breach of confidence, and it must fall upon those who reposed the confidence rather than on an innocent person.

The counsel for the defendants argued that as a part of the money derived from the discount of the note went toward the payment not only of the five hundred dollar note but to certain over-drafts of the defendants Hunt, Paylor & Co., Paylor became the agent of the plaintiff in the transaction by which the one thousand dollar note was procured, and that thereby the plaintiff is fixed with the knowledge of the agreement made with James and Mitchell. We do not take that view of the matter. The burden of proof being on the defendants to show the matters pleaded in avoidance, they having admitted the execution of the note, and no proof having been offered tending to prove such matters, it was in the province of the Judge to direct the answer to the third issue as he did.

Affirmed.