WALKER v. BRINKLEY.

(Filed September 16, 1902.)

BONDS—*Laches.*

> A bond required by an employer before appointing an employee,
> and conditioned to be void if the employee performed his
> services faithfully and competently, is a primary liability,
> and the doctrine of laches does not apply.

ACTION by Walker & Myers against D. O. Brinkley and
others, heard by Judge *H. R. Starbuck* and a jury, at Decem-
ber (Special) Term, 1901, of the Superior Court of WASH-
INGTON County.    From a judgment for the plaintiffs, the de-
fendants appealed.

*A. O. Gaylord,* for the plaintiffs.
*W. M. Bond,* for the defendants.

FURCHES, C. J.    The plaintiffs being residents of the city
of Baltimore, Md., and the owners of a saw-mill in Plymouth,

N. C., in December, 1898, employed one C. L. Morton as their general manager and agent of said mill and milling business, taking the bond sued on for their protection and indemnity against the default and misconduct of the said C. L. Morton, which is in the following words and figures:

"NORTH CAROLINA—Washington County.

"We, D. O. Brinkley, L. S. Landing, Louis P. Hornthall and Warren Ambrose, of the county and State above named, acknowledge ourselves bound unto A. M. Walker and James R. Myers, trading as merchants in Baltimore, Md., under the firm name of Walker & Myers, in the sum of fifteen hundred dollars. The conditions of the foregoing obligation are such, that whereas one C. L. Morton, of said county and State, has contracted with the said Walker & Myers, as employee of said Walker & Myers, to operate and superintend the saw-mill owned by Walker & Myers, at Plymouth, North Carolina, and to act as general business manager thereof in the manufacture of pine, ash, cypress and juniper timber, subject to the orders and control of said Walker & Myers: Now, therefore, if the said C. L. Morton shall faithfully act as such manager, as aforesaid, and perform the services required in that capacity in a reasonably safe, competent and honest manner during the time in which he shall hold the same, this obligation to be void. Witness our hands and seals.

                         "D. O. BRINKLEY.         (Seal.)
                         "L. S. LANDING.          (Seal.)
                         "LOUIS P. HORNTHALL.    (Seal.)
                         "WARREN AMBROSE.      (Seal.)

"Signed December 5, 1898, and forwarded to W. & M., by H. S. Ward."

While this bond was required by the plaintiffs before they appointed C. L. Morton their agent and superintendent of their mill, and was intended to protect them against the mis-

conduct and defalcations of said Morton, it was an original primary liability, and not secondary. It is a penal bond, in which the defendants acknowledge themselves bound to the plaintiffs in the sum of fifteen hundred dollars, to be void upon the said C. L. Morton performing the conditions therein contained. Of course, if he has performed the conditions, the plaintiffs have no right of action. But the action is brought upon this bond, and breaches of its condition are specifically set out and assigned.

The answer of the defendants is what is known as a statutory denial of the complaint—that they "had no knowledge of the facts alleged, nor sufficient information to form a belief as to their truth, and they are, therefore, denied."

There was but one witness introduced, the plaintiff, James R. Myers, who testified that he met the defendants in Mr. Ward's office; they talked the matter over, and he employed the said C. L. Morton upon the terms stated in the bond; that soon after that, he received the bond enclosed in a letter from Mr. Ward, stating that it was good for $4,000; that he at once wrote Mr. Ward and C. L. Morton that the bond had been received and accepted, and C. L. Morton took possession of the mill and assumed its control and management; that the defendants all had admitted to him that they signed the bond, and that the defendants and their attorney, Ward, all lived in the town of Plymouth, Washington County.

Upon this uncontradicted evidence, the following issues were submitted to the jury (and found as stated) with an agreement of counsel that the case should be referred to ascertain the damages, if the jury should find for the plaintiffs:

"1. Did defendants, Brinkley, Hornthall, Landing and Ambrose, execute the bond set out in the complaint? Yes."

"2. Were said defendants discharged from said bond by the negligence of the plaintiffs, as alleged? No."

There are but two exceptions set out in the record—one is

to dismiss the action, for the reason that the evidence showed that the defendants had no notice of the acceptance of the bond. This was overruled, and the Court charged the jury, "if they believed the evidence, they should find the first issue, 'Yes,' and the second issue, 'No,'" and the defendants again excepted.

Neither of these exceptions can be sustained. Instead of the evidence showing that the defendants did not have notice of the acceptance of the bond, it strongly tended to prove that they did have such notice, *if it was necessary to give them any such notice*. *Straus v. Beardsley,* 79 N. C., 59. And it being a primary, and not a secondary liability, the doctrine of laches does not apply, *if there had been such.*

The Court gave judgment for the plaintiffs and made the order referring the case to ascertain the damages, as it had been agreed by counsel he should do, and the defendants appealed. As we see no error, the judgment is

Affirmed.