MONTGOMERY, J., dissenting in part.
This action was brought to recover the sum of $2,000, alleged to be due by the defendant on a guaranty. The firm of Roberts Bros., on 9 April, 1899, was indebted to the plaintiffs, who were merchants, in the sum of $1,742.60, for goods theretofore sold and delivered, and were desirous of making further purchases, but the plaintiffs refused to sell any other goods to them unless they would secure by a guaranty their then existing indebtedness and any other amount that might become due for future sales. Roberts Bros. then requested the defendant to give the (416) required guaranty for them, so that they could purchase more goods. The defendant complied with this request by executing a paper writing, of which the following is a copy:
"KNOXVILLE, TENN., 8 April, 1899.
"I hereby guarantee to Cowan, McClung Co. any debts which Roberts Bros. now owe, or may owe in the future, to the extent of two thousand dollars. This obligation to remain in full force until the debt now due Cowan, McClung Co. is fully discharged and this agreement annulled in writing.
W. S. ROBERTS."
The original paper is in the handwriting of one of the plaintiffs, and was delivered to the plaintiffs by Roberts Bros. On the faith of this guaranty, the plaintiffs afterwards sold and delivered to Roberts Bros. several bills of goods, amounting in all to $475.45, which amount they failed to pay at maturity; whereupon the plaintiffs notified the defendant of their default, and when, after demand, he refused to pay the amount specified in the guaranty, he brought this action, in September, 1899. The firm of Roberts Bros. became insolvent, and in August, 1899, were adjudicated bankrupts. No assets were left after allotting the exemptions and paying the costs and charges of administering their estate. *Page 303 
There was evidence tending to establish the foregoing facts, and also to show that one of the plaintiffs' salesmen demanded of the defendant the payment of the amount of the guaranty, and the latter stated to him that he had seen the guaranty and wished to have it adjusted, and expressed surprise that he was "in for so much." He also stated to the salesman that he had signed the guaranty with the understanding that the members of the firm of Roberts Bros. would have their father, J. J. Roberts, sign the same with him. The defendant and (417) J. J. Roberts agreed to give notes for the amount of the guaranty, but at the last moment J. J. Roberts refused to sign them. It was also in evidence that on the day after the guaranty was signed the defendant asked Roberts Bros. if J. J. Roberts had signed, to which they answered that he had not, as they had concluded not to go to him, but to get Robinson Baird to sign it, and the defendant then told them to write to the plaintiffs and have his name taken off the paper. The defendant inquired every week if they had received any answer from the plaintiffs, and, not being able to get a satisfactory answer, wrote himself to the plaintiffs, on 7 July, and requested them to erase his name, as he would not endorse for them any longer, because they had deceived him. All the goods had then been sold. The plaintiffs introduced in evidence the following letter from the defendant to them, dated 24 July, 1899: "Please send me by return mail a copy of that paper with my name attached to it, sent by Roberts Bros., of this place; also amount purchased by them since the date of that paper, and oblige." . . . And also a letter from them to the defendant, dated 8 July, 1899, in reply to his letter of 7 July, 1899, as follows: "Your favor of 7 July, 1899, is at hand. The credit extended to Roberts Bros. was based on your guaranty to the extent of two thousand dollars, and we cannot relinquish this guaranty of yours until the debt made under said guaranty is paid. They owe us at this time upwards of two thousand dollars, and we will thank you to see to it that our debt is paid, as we are very sorely pressed for money at this time." The defendant, who was introduced as a witness in his own behalf, testified that he signed the guaranty upon the condition that J. J. Roberts would sign it with him. He was told by Roberts Bros. that they needed the guaranty in order to get more goods to renew their stock. He further stated that Roberts (418) Bros. had told him that they had written to the plaintiffs to erase his name, but that he mistrusted them, and wrote himself, after waiting three months.
At the close of the testimony the court intimated that it would charge the jury to find the issue for the defendant, in deference *Page 304 
to which intimation the plaintiffs, after excepting, submitted to a nonsuit and appealed.
The defendant's counsel, in his able argument before us, relied upon three grounds of defense: (1) That there was no evidence that the plaintiffs had accepted the guaranty and notified the defendant of their acceptance. (2) That there was no consideration to support the guaranty as to the debt already due by Roberts Bros. to the plaintiffs, amounting to $1,742.50. (3) That the guaranty was given upon a condition which was never performed, and that it is therefore void, even in the hands of the plaintiffs.
A guaranty is a promise to answer for the payment of some debt, or the performance of some duty, in case of the failure of another person who is himself in the first instance liable to such payment or performance. Carpenter v. Wall, 20 N.C. 144. There is a well-defined distinction between a guaranty of payment and a guaranty for the collection of a debt, the former being an absolute promise to pay the debt at maturity, if not paid by the principal debtor, when the guarantee may bring an action at once against the guarantor, and the latter being a promise to pay the debt upon condition that the guarantee diligently prosecuted the principal debtor for the recovery of (419) the debt, without success. Jones v. Ashford, 79 N.C. 172; Jenkins v. Wilkinson, 107 N.C. 707; 22 Am. St., 911. The guaranty may also be absolute in form, or one which binds the guarantor to pay unconditionally, or, at all events, upon the default of the principal, or it may be in the form merely of an offer to become bound upon the default of the principal. In the former case — that is, where there is an absolute guaranty or an unconditional promise to indemnify against loss by the principal's default — no notice of acceptance by the guarantee is required, the liability of the guarantor being fixed and determined by the ordinary rules in the law of contracts. In the latter case, when the transaction takes the form of an offer merely to become responsible for the principal, notice of acceptance of the offer is, of course, necessary in order to charge the party, who makes the offer, as guarantor, and this is so because the minds of the parties have not met; there is no aggregatio mentum until the offer is accepted. There is a well-recognized distinction, therefore, between an offer or proposal to guarantee and a direct promise of guarantee. The former requires in *Page 305 
some cases notice of acceptance, while the latter does not. When the offer to guarantee is absolute and contains in itself no intimation of a desire for or expectation of specific notice of acceptance, it may be supposed that the offerer has a reasonable knowledge that his guaranty will be accepted and acted upon, unless he is informed to the contrary. 2 Parsons Cont. (8 Ed.), ch. 2, sec. 4, and notes, where the subject is fully discussed. It is said that if the party distinctly and absolutely guarantees a certain line of credit, it presupposes some sort of a request for a guaranty, emanating from the guarantee, and for this reason no formal acceptance by the guarantee is necessary; but if it be only a proposition to guaranty the credits, and not a positive promise to guaranty them, the acceptance of the proposition must, in some way and within a reasonable time, be communicated before the guarantor can be held (420) liable on it. Tiedeman Com. Paper, sec. 420.
In our case the guaranty is a direct and unconditional promise to answer for the default of the principal to the amount of $2,000. The words of the contract are in presenti, "I do hereby guaranty," and superadded are the words, "This obligation to remain in full force." . . . . Language could not be stronger to express the intention to become liable at once, without any expectation of notice that the plaintiffs will accept the guaranty. It was not an offer, nor did it imply an offer merely, but it was in itself a complete and binding promise to guaranty, and needed only the sale of the goods by the plaintiffs to make it otherwise effectual. 1 Parsons, supra, pp. 466, 467.
We cannot distinguish this case from Straus v. Beardsley, 79 N.C. 59, where the Court says: "If the undertaking be to guaranty the contract which may be made, the obligation is not collateral and contingent, but absolute and unconditional, and no notice is necessary. . . . The undertaking is to pay a certain sum, and by the terms of the condition it is discharged only when the goods have been delivered under its provisions, by actual payment
of the purchase price. If the goods are delivered, the contract is to pay for them, and a compliance with this condition is the only means of discharging the obligation. It thus became the duty of the intestate and his associates to ascertain for themselves if the plaintiffs furnished the goods and that they were paid for, and no notice or demand was necessary to charge them with the debt." See, also, Walker v. Brinkley, 131 N.C. 17.
In Williams v. Collins, 4 N.C. 382, this Court drew the distinction between a guaranty that a certain person will be able to comply with the proposed contract and one wherein the *Page 306 
(421) promise is that he shall comply. In the latter case, which is ours, the Court held that the guarantor, "to all legal consequences, became pledged absolutely to the same extent as the principal debtor was bound, as soon as the guarantee parted with his property." In Shewell v. Knox, 12 N.C. 404, all the Judges agreed that, if the guaranty is absolute and addressed to an individual, no notice of acceptance is necessary, and one of the Judges held that it was not even necessary when a letter of credit was given, under the circumstances of that case. The general principle as to when notice of acceptance of an offer to contract becomes necessary is considered in Crook v. Cowan,64 N.C. 743, and Ober v. Smith, 78 N.C. 313. The question as to notice of acceptance in cases of guaranty is very ably and exhaustively discussed, with a full review of the English and American authorities, in Wilcox v.Draper, 12 Neb. 138; 41 Am. Rep., 763, and the conclusion is reached that when there is a direct promise of guaranty no notice of acceptance is required. Allen v. Peck, 3 Cush., at p. 242; Powers v.Bumcratz, 12 Ohio St. 273; Bank v. Costner, 3 N.Y. 212; 53 Am. Dec., 280; Bank v. Phelps, 86 N.Y. 484; 2 Addison Cont. (8 Ed.), p. 84 (star page 651). Gregory v. Bullock, 120 N.C. 260, does not apply, as the Court held that there was no contract at all in that case, and what is said about the guaranty was with reference to the particular facts under consideration, from which it appeared that there was only "a proposal based upon an uncertain event." The guaranty in this case, as to both the past and future indebtedness, is evidenced by one and the same instrument, and is supported by one and the same consideration, and we do not therefore see why the law applicable to the one should not also determine the liability in the case of the other.
We are of the opinion that the testimony of the defendant (422) as to his interviews and communications with the principals, Roberts Bros., and his subsequent promise to pay for the goods after the guaranty had been executed by him, furnishes some evidence to show that he knew the guaranty had been delivered to the plaintiffs, and that they were acting upon it, or intended to do so.
There was a sufficient consideration to support the guaranty as to the debt already due. The agreement as to the existing and the future indebtedness was indivisible, and was based upon one and the same consideration, which was that the plaintiffs should sell more goods to the principals to enable them to replenish their stock, which he did. It is not necessary that the consideration should be full or adequate, as in the case of bona fide purchasers for value. If there were any legal consideration, it is sufficient. *Page 307 
The promise of the guarantee to furnish the goods was such a consideration and supports the contract of guaranty. 1 Parsons, supra, pp. 466, 467.
The third ground of defense is not tenable. If the written guaranty was given to the principals upon condition that it should not be delivered to the plaintiffs until it was signed by J. J. Roberts, and they delivered it in violation of the condition, and thus, as is said in the case, practiced a fraud upon the defendant, the defendant is bound, as the plaintiffs did not participate in this alleged fraud, nor is it shown that they had notice of it. The liability of the defendant is founded upon the principle that where one of two persons must suffer loss by the misconduct or fraud of a third person, or by his breach of confidence, as in our case, the loss should fall upon him who first reposed the confidence, or who, by his negligence, made it possible for the loss to occur, rather than on an innocent third person. The liability of the defendant in this respect is fully established by Vass v. Riddick, 89 N.C. 6. See, also, Bank v. Hunt, 124 N.C. 171; Barnes v. (423)Lewis, 73 N.C. 141; 21 Am. Rep., 461.
The plaintiffs agreed to sell the goods to the principals, not upon the single consideration that the defendant would guaranty the payment of the price, but upon the further and additional consideration that he would guaranty also the payment of the existing indebtedness. He would not have sold but for the last consideration, and therefore by reason of the guaranty he has been induced to change his position; and should the guaranty as to that indebtedness be declared invalid, he will be prejudiced, as he no doubt would have taken immediate steps to collect his claim if the guaranty had not been given. It will be impossible for him now to save himself, for the reason that the principals have become insolvent and have been adjudged bankrupts. We have said this much, though we do not concede that, in order to charge the defendant on the guaranty, it is necessary to show a change in the guarantee's position by which he may be prejudiced if the guaranty is held to be void.
We have not commented upon the evidence in this case, from which it appears that the defendant knew, on the day after the guaranty was given, that it had been sent to the plaintiffs and had not been signed by J. J. Roberts, and, knowing this fact, and "mistrusting" the principals, as he did, according to his own testimony, he delayed for nearly three months to notify the plaintiffs of the alleged condition annexed to the guaranty, and in the meantime they had sold the goods. When they refused to surrender their security, he finally agreed to pay the bill for the *Page 308 
goods sold after the date of the guaranty. This was a clear case of negligence on his part, and the consequences of this negligence must be visited upon him and must not be borne by the plaintiffs, who are innocent parties. As said in Barnes v. Lewis, (424) supra, the defendant acted upon the assurance that another would do an act which he knew might be defeated or prevented by various accidents, and he must therefore take the risk of such assurance being fulfilled. He confided in the principals, Roberts Bros., and the condition that J. J. Roberts should sign with him was communicated to them alone. He failed to use ordinary precaution, either to protect himself or to protect the guarantee. If the defendant, in any phase of the testimony, can be regarded as an innocent person in this transaction, it yet remains as an inflexible rule of the law that where one of two innocent persons must suffer, he who has enabled a third person to occasion the loss must sustain it. This is said to be a doctrine of general application, and is a most just and reasonable one. Barnes v. Lewis, supra. To permit the defendant to avail himself of his defense to this action would also contravene that other just and inflexible maxim of the law that no man shall take any advantage of his own wrong.
No question arises in this case as to diligence on the part of the guarantee in collecting the debt from the principal, as this is a guaranty of payment and not for collection, and, besides, the burden of proof in this respect would be on the defendant. The case shows that notice of the default of the principal was given, and demand made upon the guarantor before the suit was commenced.
Our conclusion is that there was error in the intimation of opinion by the court adverse to the plaintiffs, by which they were driven to a nonsuit. The judgment must therefore be set aside and a new trial awarded.
New trial.