BANK OF BENSON v. J. W. JONES et al.

(Filed 22 April, 1908).

1. **Principal and Surety—Creditor's Representations—Additional Surety—Discharge of Surety.**

    Persons signing a note as surety upon faith in the creditor's representation that another will sign as cosurety, leaving the note with the creditor for that purpose, are not bound thereon to such creditor upon the failure of the fulfillment of the representation. (*Bank v. Hunt*, 124 N. C., 171, cited and distinguished).

2. **Same—Principal and Surety—Substituting Invalid Note—Old Note Surrendered—Failure of Consideration—Liability of Surety.**

    When the sureties on a note signed with their principal a second note at the request of the creditor, under an unfulfilled agreement with him that another should also sign as surety, and the second note was left with the creditor, who delivered it to the

principal, the liability of the sureties on the first note was not discharged by reason thereof, as there was nothing of value given in lieu of the first note, the second one being void.

3. **Negotiable Instruments—New Note—Presumption of Renewal—Principal and Surety—Discharge of Surety—Burden of Proof.**

A new note given for an antecedent debt evidenced by note raises the presumption that it was not intended as an extinguishment; and when the sureties thereon contend that satisfaction was intended, so as to discharge their liability, the burden of proof is upon them to show that it was so intended.

CONNOR, J., dissenting, *arguendo;* WALKER, J., concurring in dissenting opinion.

ACTION tried before *Jones, J.,* and a jury, at March Term, 1907, of JOHNSTON.

Defendant appealed.

*Pou & Brooks, Godwin & Townsend* and *J. H. Pou* for plaintiff.

*E. S. Abell, W. A. Stewart* and *B. C. Beckwith* for defendants.

CLARK, C. J. The defendants Allen and Hudson were sureties upon a note executed 1 May, 1904, by defendant Jones to plaintiff for $2,948.45. On 4 January, 1905, the said Allen and Hudson were asked by plaintiff's cashier to sign a new note for $3,091.56, which they testified that they agreed to do on condition that one C. T. Johnson (who was not on the former note) would also sign as surety, and if he did not they would not sign; that they signed the note upon that agreement and left it with said cashier; that C. T. Johnson has not signed said note; that the cashier, however, held the old note till the directors accepted the new note, whereupon he surrendered the note of ·1 January, 1904, to Jones, the principal therein. The plaintiff in its replication contended that the note of 1 January, 1905, was merely a renewal of the note of 1 May, 1904, though the latter had been surrendered, and if the renewal note of 1 January, 1905, was

invalid for the reason above stated, recovery could be had for the principal and interest of the note of 1 May, 1904.

The court announced at the conclusion of the evidence that he would charge the jury that, if they believed the evidence, both notes represented the same indebtedness, and inasmuch as C. T. Johnson had not signed the first note his failure to sign the second note would not discharge the sureties, Allen and Hudson, whereupon they submitted to judgment and appealed. The court entered judgment upon the first note for $2,599.27, with interest from 15 March, 1906, being the sum due thereon, deducting credits. "Where a person has become surety upon faith of the creditor's representation that another will become cosurety, he is not bound if that other person does not join, and in equity it makes no difference that the guaranty was under seal." Pollock Cont., 470. This case differs from *Gwyn v. Patterson,* 72 N. C., 189; *Barnes v. Lewis,* 73 N. C., 138, and *Bank v. Hunt,* 124 N. C., 171, for in each of those cases the agreement was between the principal and surety, and its breach could not affect the creditor. Here the contract was between the creditor and the surety. Its breach therefore absolved the sureties from any liability upon the second note. *Cowan v. Baird,* 77 N. C., 202; 1 Brandt Suretyship (3d Ed.), secs. 449, 451.

But the note of 1 May, 1904, set up in the replication, was not paid by the inchoate and incomplete note of 1 January, 1905. "When a new note is given for an antecedent debt the presumption is that it was not intended as an extinguishment unless there be proof that such was the intention." *Hyman v. Devereux,* 63 N. C., 627, citing numerous authorities. Here, upon the defendants' own contention and evidence, there was nothing given in lieu of the first note, the inchoate note of 1 January, 1905, being incomplete and void. The position of the creditor and the liability of the defendants were in nowise changed, and the unadvised surrender of the first note before the second was perfected did not pay off nor

cancel the first note. His Honor properly held that the burden of proving payment or discharge. was on defendants. If the new note had been perfected with an additional surety this would have presented a different case. This would have been a new contract in discharge of the old, unless an intention to hold the second as additional security had been shown.

No Error.

CONNOR, J., dissenting: The record, for the purpose of presenting my views, presents the following case: The plaintiff bank held a note dated 1 May, 1904, due 1 December, 1904, for $2,958.45, against defendant Jones as principal and Allen and Hudson, sureties. On 4 January, 1905, after the maturity of the note, the cashier of the bank notified the sureties that something must be done about it. Defendants Allen and Hudson said that they would sign again, or renew, if one C. T. Johnson would also sign as surety—Johnson was not on the note—but that if he would not sign they would not do so. The cashier said that Johnson would sign. The parties, at the request of the cashier, went to the bank for the purpose of signing a new note. The defendant sureties asked where Johnson was. The cashier told them it was all right; Johnson would come and sign the note. The parties thereupon signed a new note, due 4 February, 1905, for $3,091.56, being the amount of the first note, with interest included to maturity. Jones, the principal, asked for the other note. The cashier said that he would have to submit the new note to the board of directors; it would meet that night; if they accepted the note he would surrender the other one to Jones the next day. Relying upon this statement, the note was left with the cashier, who on the next day surrendered it to Jones. Johnson did not sign the new note. There is nothing in the record showing why he did not sign or that the cashier endeavored to have him do so or that defendants had any notice of his failure to do so. On 3 March, 1905, plaintiff bank brought suit on the new note against all of the defendants. The complaint

BANK *v.* JONES.

sets up the note as the sole cause of action, making no reference to the old note. Jones, the principal, filed no answer, and judgment by default was taken against him for $3,091.56 and interest from 1 February, 1905. At the return term, March, 1905, the defendants Hall and Hudson filed an answer setting up the foregoing facts as a defense. The case was continued as to them. At December Term, 1905, plaintiff filed a reply denying the new matter set up in the answer and averring that if it were true the new note was given in renewal of the note of 1 May, 1904, for $2,958.45, and that the defendants Hall and Hudson were still liable thereon. The plaintiff demanded "judgment as prayed for in the complaint." The reply was filed 2 January, 1906. Defendants Allen and Hudson filed an answer to so much of the reply as referred to the old note, alleging that the note of 4 January, 1905, was given, and received by plaintiff, in full payment and discharge of the said note of 1 May, 1904, and in accordance therewith the said note was surrendered to the principal, Jones. They reaffirm their allegation that they signed said note 4 January, 1905, upon the distinct understanding with the cashier of plaintiff that Johnson would sign, and that without such understanding and agreement they would not have signed it. They tendered issues upon the allegations and introduced evidence tending to sustain their contention. At the conclusion of the evidence his Honor announced that he would instruct the jury that, if they believed the evidence, "the plaintiff was entitled to judgment for the amount unpaid and evidenced by the two notes, respectively." The defendants excepted. Judgment was thereupon rendered against the defendants Hall and Hudson upon the note of 1 May, 1904, for $2,958, less certain credits therein, from which they appealed. I am constrained to dissent from the opinion of his Honor and the majority of this Court. Was plaintiff entitled to judgment on the note of 1 May, 1904? It is the settled doctrine of this Court that the measure of liability of

a surety is fixed by the terms of his contract, and "that he is entitled to stand upon the letter of his contract, and his undertaking is to be construed strictly in his favor and is not to be extended by implication or inference beyond its scope or terms." 27 Am. and Eng. Enc., 441. It is also settled by the authorities cited in the opinion of the Chief Justice that if a surety sign a note in the presence of an agent of the obligee, with the understanding that he is not to be thereby bound unless another person shall also sign as surety, he is not liable unless the note is signed by such other person. It is contended that, conceding this to be the law, when a note is taken in renewal of another there is presumption that it is not a payment. *Hyman v. Devereux,* 63 N. C., 627, is relied upon to sustain this view. It is undoubtedly true, as held by this Court in that and many other cases, that taking a new note for one secured by mortgage does not discharge the mortgage "unless there is proof that such was the intention." *Collins v. Davis,* 132 N. C., 106. It is also true that "courts of equity will, to accomplish the ends of justice, keep alive a security which in form has been surrendered." In *Wilson v. Jennings,* 15 N. C., 90, it was held that a note given by one of the partners for a partnership debt did not *of itself* discharge the original demand. *Daniel, J.,* said: "It was not pretended that the individual note of Thompson was agreed to be taken by plaintiffs in discharge of the partnership debt, and a note given even by all the partners would not extinguish the original undertaking to pay for the goods delivered, like a bond or *judgment taken for the same.*" It is also held that a draft received for goods sold and delivered is not a discharge of the debt, but the plaintiff, *upon surrendering the same* or proving its loss, may sue for the price of the goods. *Mauney v. Coit,* 86 N. C., 463. In that case the jury found upon a specific issue that the draft was taken as collateral security only. In *Cotton Mills v. Cotton Mills,* 115 N. C., 475, it was found that a draft was given for a large amount on an open

account.    The draft was accepted, but not paid.    The plaintiff, without surrendering the draft, undertook to split up the account and obtain judgment before a justice.    *McRae, J.,* said: "That the sum of $2,972.82 included in the draft was merged into it, and, while said draft was in existence and *not delivered up to the acceptor,* the said draft amounted to a payment and satisfaction, *if it was so intended,* of so much of the open account, is well settled," citing *Mauney v. Coit* and *Wilson v. Jennings, supra;* also *Spear v. Atkinson,* 23 N. C., 262, wherein the plaintiff was not permitted to recover on the original debt because he did not tender or offer to surrender the bill of exchange given for it.    In *Bank v. Hollingsworth,* 135 N. C., 556, citing *Lee v. Fountain,* 10 Ala., 755; 44 Am. Dec., 505, we held that if there were any facts tending to show that the note was received in payment of the debt it became a question for the jury.    The defendants distinctly allege and introduce evidence strongly tending to prove that the new note was given and accepted in payment and discharge of the old one—that the bank undertook to have a new and additional surety to sign, and surrendered the old note to Jones, the principal.    This contention is further sustained by the conduct of the plaintiff.    It sues on the new note, and when defendants Hall and Hudson set up the matter by way of discharge and defense it takes judgment against the principal, thus merging its cause of action on all preceding securities into a judgment.    Certainly this was evidence fit for the consideration of the jury tending to rebut the presumption that it was the intention of the parties that the old note was to remain in force as an obligation against the sureties.    If the jury had found that the new note was given and accepted by the plaintiff in discharge of the old one the parties would then have been at issue on the matter set up by way of defense to the new note.    But do not the facts of record as matter of law operate to discharge the old note?    Eliminating for the purpose of considering this question all matters in contro-

versy, we have this condition: The note is given 4 January, 1905, by the principal and sureties for the amount of the old note, with interest and discount. The old note is surrendered, and for thirty days certainly no action could be brought. At the end of the time an action is brought against all of the parties and judgment taken against the principal. How, with any regard to the contractual legal rights of the parties, can a creditor recover a judgment against the principal on one note, thereby merging his cause of action, and recover a judgment against the sureties on another note, which has been surrendered and destroyed, as a cause of action against the principal? The suggestion is so novel that it is impossible to find authority. It seems that the statement of the proposition carries its answer. The sureties had a right to demand, before judgment passed against them, that the note be surrendered and filed or its loss accounted for. This the plaintiff cannot do, because it has surrendered the note and destroyed its cause of action. Their principal is discharged and they are held. When the bank surrendered the old note, with the understanding and agreement that it would procure Johnson's signature as surety, the transaction, so far as the sureties were concerned, was complete. It was not inchoate. They had complied with their contract, and the bank had undertaken to procure Johnson's signature, without which defendants expressly refused to sign. In this condition of the transaction the bank could not recover on the new note, because there was an express condition attached to the liability, the performance of which the bank had undertaken, to-wit, Johnson's signature. Of course, if the bank had any valid equitable ground for asking relief from their performance of the condition, it was open to it in this action by way of reply to the new matter set up in the answer. This was an equitable counterclaim and should have been pleaded and sustained by proof. If, for instance, Johnson had suddenly died or been rendered incapable of signing by some providen-

BANK v. JONES.

tial cause. It may be suggested that the signature of John-son was not a condition precedent to defendants' liability on the new note, or a condition subsequent, the failure to per-form which would release them, but a collateral undertaking on the part of the bank entitling the defendants to damages for its breach. In that view, if Johnson was solvent and the bank failed to perform its collateral contract, it would seem that the measure of damages for the breach would be one-third of the new note, that sum representing the liability of each surety as between themselves if Johnson had signed. This view may be presented upon defendants' evidence and upon the theory that the plaintiff was pursuing its remedy on the old note. For the reasons stated I am unable to see any theory upon which the defendants can be held upon the old note. That a court of equity will in certain cases reinstate a bond or other security surrendered as cancelled by accident, mistake or by fraud of the obligor is well settled, but there is no suggestion of any such equity, except that the reply states that the old note was surrendered by mistake. In any aspect of the case the question of fact raised by the answer should have been submitted to the jury. It is no sufficient answer to say that the defendants are not hurt. Their right is legal and grows out of their contract. Besides, they are hurt. If Johnson had signed they would have sustained but one-third each of the loss. Courts should construe contracts and en-force them, and not make new ones for parties to meet hard cases. The equitable power of the court is ample to relieve against fraud, mistake or oppression. I think there should be a new trial.

WALKER, J., concurs in dissenting opinion.