Birger Peterson, Appellee, v. Charles A. Swanson, Appellant.

Gen. No. 34,231.

Heard in the second division of this court for the first district at the April term, 1930. ▆▆▆ Opinion filed October 14, 1930. Rehearing denied October 27, 1930.

WILLIAM L. HOWARD, LOUIS BRESLER, MAX HALEFF, CHARLES G. HENDRICKS and JACOB H. COHN, for appellant.

JOSEPH G. SHELDON, for appellee.

MR. JUSTICE BARNES delivered the opinion of the court.

This is an action on a promissory note, tried before the court without a jury. The finding was against defendant in the sum of $5,824, and from the judgment entered thereon this appeal is brought.

The action is based on the theory of defendant's liability as a maker of the note. The theory of the defense is that he was an indorser and as such not liable because of failure to give him notice of default of payment. It is conceded that the notice required by law to be given an indorser was not given defendant, and that if he placed his signature on the note in that capacity he is not liable.

The note, dated May 6, 1927, was originally executed by Charles Bidwell and Esther K. Bidwell, his wife, and was made payable to "bearer" in instalments. It was taken by defendant Swanson, his wife and one Axel L. Johnson, as part payment of certain premises sold by them to Mrs. Bidwell and secured by said trust deed, signed by said Charles Bidwell and his wife, and referred to on the face of the note. Subsequently (June, 1928) said holders negotiated the sale of the note and mortgage to plaintiff Peterson, each at that time signing the note underneath the signatures of the Bidwells under the following circumstances as disclosed by oral evidence received without objection.

Sometime in May, 1928, Swanson came to the office of one Burgeson, a broker, and told the latter's employee, one Sundell, that he had a note and mortgage for sale, describing the same and the building mortgaged. As described to him (not having the papers) Sundell submitted the matter to Peterson. When told "Mr. Bidwell" was owner of the mortgage building Peterson said he "would not buy any of Bidwell's mortgages" unless Swanson was willing to "guarantee the mortgage," because he knew him to be reliable. Afterwards Peterson and Swanson were brought together on two occasions. On the second one the deal was closed, at which they and Burgeson, only, were present.

At the time of consummating the deal Peterson saw the papers for the first time. Noting that the additional signatures were on its face underneath the signatures of the Bidwells, he asked about "the guarantee on the note" and Swanson pointed to the additional signatures. He then inquired whether a "guarantee" should appear on the front or back of the note. Burgeson thought it made no difference, and Swanson said nothing. The exchange of check and note was then made.

Prior to the consummation of the deal neither Peterson nor Burgeson had seen the note or mortgage, and Burgeson had told Swanson that Peterson refused to buy unless the note was "guaranteed," and Swanson testified that Burgeson told him Peterson wanted some one else "to take care of the note if Bidwell did not." He also told his co-owner, Johnson, that he wanted him to sign his name "on the face of it, otherwise he couldn't sell it," and thereupon Johnson signed it. Mrs. Swanson signed the note before the deal—just when is immaterial for she did so at the request of her husband who seems to have acted for both her and Johnson in negotiating and closing the deal.

Appellee urges that so far as the evidence relates to the intention of the additional signers it should not be considered as it violates the well-known rule against the admission of an oral contemporaneous agreement that makes a note payable only on a contingency. But whether so or not, we do not think the evidence on that subject has any tendency to change the construction that would otherwise be given to the instrument as a matter of law.

As bearing on the construction to be given the instrument appellant refers to sections 17, 31 and 63 of the Negotiable Instruments Law of this State, Cahill's St. ch. 98, ¶¶ 37, 51 and 83. It is too apparent for discussion that the last two sections have no application to the instant state of facts. Section 17 recites the rules of construction where the instrument is ambiguous. The particular rule referred to is found in par. 6. It reads: "Where a signature *is so placed* upon the instrument that it is not clear in what capacity the person making the same intended to sign, he is to be deemed an indorser." But there is no ambiguity here as to the location or placing of the signature, or in fact in any other respect on the face of the instrument. From its face one conclusion only is deducible, namely, that appellant and his cosigners signed the note in the capacity of joint makers, and there is nothing in the proof regarding their intention that justifies a different conclusion. We might say, as said by Mr. Justice Winslow in *Germania Nat. Bank of Milwaukee v. Mariner,* 129 Wis. 544: "To say that, where it conclusively appears from the instrument that the signer intended to sign as a maker, the statute (referring to a like paragraph of the Wisconsin Negotiable Instrument Act) is intended to make him an indorser, would be little short of ridiculous."

It was also there said that said section applies only when a doubt fairly arises from the ambiguous location of the signature. There is no room for any such doubt here. The additional signatures are placed where one usually signs his name whether he intends to be bound as principal, surety or absolute guarantor. It was held in *Bank of California v. Starrett,* 110 Wash. 231, 188 Pac. 410, 9 A. L. R. Ann. 177, where a party placed his name on the left side of the bottom of the note, instead of on its right side, that he was not an indorser under said section 17, par. 6, but a maker. No case with an identical state of facts has been cited to us. Cases somewhat analogous, cited by appellee, are *Partridge v. Colby,* 19 Barb. (N. Y.) 248; *Freeman v. Clark,* 3 Strob. (S. C.) 281, and *Dusenbury v. Albright,* 31 Neb. 345, in each of which the holder of the note subscribed his name as maker before negotiating it. Each was payable to "bearer," the former to said holder or "bearer." The additional signer was in each case held liable to "bearer" as a maker. Appellant cites a different ruling in *Gibson v. Powell,* 6 How. (Miss.) 60. Cases cited presenting a different state of facts or where the note was payable to a designated payee and not to "bearer," and in transferring the note was signed by him on its face, are not applicable. If they do not present an ambiguity such as is referred to in the Negotiable Instruments Law above cited, yet it has been held in jurisdictions before the adoption of said law that a payee might in transferring title make his indorsement on the face of the note. While we are cited to no case with an identical state of facts, so far as the doctrine under the Law Merchant has been applied to somewhat analogous facts the general trend of authorities, we think, indicates that where a holder of a note payable to "bearer" is signed by him on its face on negotiating it he becomes liable as a maker thereof.

The preliminary talk about having the note "guaranteed" is not controlling. While a "guarantee" may be in the nature of a secondary obligation, requiring notice on default of the principal, yet the obligation may be direct and primary notwithstanding the employment of that term. The nature of the obligation, whether primary or secondary, is the determining element. (28 C. J. sec. 6, p. 891.) The evidence on the subject discloses no discussion at or prior to the signing and delivery of the note, on which to base a claim of contingent or secondary liability, either as a guarantor or an indorser. In fact the subject of indorsement was not referred to. If the character of the guaranty may be inferred from the evidence with regard thereto it was to be a guaranty of payment, and that is an absolute guaranty. (Arnold Suretyship & Guaranty, sec. 23; *McMurray v. Noyes,* 72 N. Y. 523; *Cowan, McClung & Co. v. Roberts,* 134 N. C. 415, 46 S. E. 979, 980, 65 L. R. A. 729.) The place where appellant signed the note implies an absolute guaranty, and there is nothing in the oral evidence with regard to it that changes that implication. As said in section 1769, Daniel on Negotiable Instruments (6th Ed.): "If A guarantees, expressly or by implication, to pay the note of B to C, provided B does not pay it, he becomes absolutely liable for its payment immediately upon B's default, and is, therefore, deemed an absolute guarantor of the due payment of the note by B to C." Where the guarantee is absolute it is the duty of the guarantor to see to the payment of the money. In such a case no demand or notice of nonpayment is required, but the holder may institute suit at the maturity of the debt without taking any other steps. (*Dickerson v. Derrickson,* 39 Ill. 574.

It is also said in Daniel on Negotiable Instruments, sec. 1763, that "where one who sells a note guarantees its payment, the guaranty is an original undertaking,

and need not be written." Such is the holding also in *Gage v. Mechanics' Nat. Bank of Chicago,* 79 Ill. 62, where the payees indorsed the note guaranteeing its payment at maturity. It was held that they undertook to pay at all hazards at its maturity and that it was a primary undertaking.

We think, therefore, that in the absence of any ambiguity or of any provision in the Negotiable Instruments Act changing the Law Merchant on the subject, the construction of the instrument must be determined from the location of the signature, placed, as it was, where a maker usually signs such an instrument. Certainly no question of ambiguity could be raised had the note passed into the hands of a third party. Section 191 of the Negotiable Instruments Act, Cahill's St. ch. 98, ¶ 214, states "the person 'primarily liable' on an instrument is the person who by the terms of the instrument is absolutely required to pay the same," and by the terms of the instrument here all signers are joint parties to the promise to pay, and from such promise would be deemed jointly and severally liable. (Par. 7, sec. 17, *supra.*) The liability of the additional signers would appear to be the same as sureties or as if they as comakers had executed a new note for the consideration Peterson paid therefor. (*Cook v. Brown,* 62 Mich. 473, 29 N. W. 46.) We are not concerned whether the change of the note affected the liability of the original makers, or with either their liability or Swanson's as joint makers.

Construing like language of said section 192 in the North Carolina statute, it was held in *Roberson-Ruffin Co. v. Spain,* 173 N. C. 23, 91 S. E. 361, that both principal and surety (comaker) are primarily liable on the note. If Swanson intended merely to be secondarily liable, either as guarantor or indorser, neither the instrument nor the evidence indicates any such intention.

He must be held, we think, from the very language of the note and the location of his signature thereon, as primarily liable as a surety comaker, regardless of the oral terms used with respect to obtaining his signature.

*Affirmed.*

SCANLAN, P. J., and GRIDLEY, J., concur.