[Civ. No. 15376.   First Dist., Div. One.   Jan. 30, 1953.]

HELENE BARDIN SCHAEFFLE, Respondent, v. FRANK
L. NOLAN, JR., et al., Defendants; ALEXIS L. EHR-
MAN, Appellant.

Joseph C. Meyerstein for Appellant.

Vernon F. Smith for Respondent.

WOOD (Fred B.), J.—Defendant Alexis L. Ehrman has appealed from a judgment against him and defendants Frank Nolan, Jr., and Annie Nolan as comakers of a promissory note in favor of plaintiff Helene Bardin Schaeffle, payee.

Ehrman claims the trial court should have found (1) that he was an indorser and was discharged by failure of the plaintiff to give him notice of default on the note, and (2) that he was an accommodation party and was discharged by plaintiff giving an extension of time to the principal debtor without Ehrman's knowledge or consent.

(1) *Was Ehrman an indorser and as such discharged by the failure of the plaintiff to give him notice of default?*

The note, dated April 12, 1945, was in the principal sum of $12,000, payable at the rate of $250 per month, commencing May 15, 1945, and recited, "For value received, we jointly and severally promise to pay . . ."

The three defendants signed in the place usual for makers, i.e., in the right hand portion of the space below the text of the note. Frank Nolan's signature appeared first, below his came Annie's, and below hers we find Ehrman's, with this difference: Frank's and Annie's names had been typed and each signed on a line just above the typing; Ehrman's penned signature appeared below without a line or typing.

■ This circumstance, appellant contends, brings section 3098 of the Civil Code into play: "Where the language of the instrument is ambiguous or there are omissions therein, the following rules of construction apply . . . (6) Where a signature is so placed upon the instrument that it is not clear in what capacity the person making the same intended to sign, he is to be deemed an indorser."

It is difficult to see the applicability of this statute. Ehrman "placed" his signature precisely where one would look for the signature of a maker, not that of an indorser. There is nothing about that to make it "not clear" in "what capacity" he signed. Quite clearly he signed as a maker, one of the "we" mentioned in the note. The mere fact that the signature of each of the other two makers appears in a space specially provided therefor, does not change the location of Ehrman's signature "upon the instrument," does not move it to a "place" inappropriate for that of a maker.

In applying this statute we cannot seek the aid of parol evidence to ascertain the intent with which Ehrman signed where he did. If the statute does apply, it declares Ehrman an "indorser." It sanctions no inquiry concerning his intent. Subdivision (6), like other subdivisions of the section, is designed to make certain that which is uncertain; e.g., "when the instrument is not dated, it will be considered to be dated as of the time it was issued" (subd. 3), and "where there is a conflict between the written and printed provisions of the instrument, the written provisions prevail." (Subd. 4.)

We have found no judicial decision in this state construing this statute. *Shain* v. *Sullivan,* 106 Cal. 208 [39 P. 606], decided long before the adoption of the Uniform Negotiable Instruments Act in this state, was a case of indorsement by the payees upon the face of the note, at the left hand end thereof. In *Peoples State Bank* v. *Penello* (1922), 59 Cal. App. 174, 183-184 [210 P. 432], the court quoted the Shain case to the effect that a. signature on the face of a note may be an indorsement if so intended by the parties, but made no mention of section 3098. *Figari* v. *Olcese* (1921), 184 Cal. 775 [195 P. 425, 15 A.L.R. 192], likewise contains no reference to section 3098. There the word "witness" appeared opposite the signature of a purported maker of the note. He was allowed to show by extrinsic evidence that he did sign as a witness, not as a maker.

Other states have had occasion to interpret the statute here involved (Civ. Code, § 3098; Uniform Negotiable Instruments Act, § 17). Wisconsin, in 1906, gave it the same interpretation as have we. In *Germania Nat. Bank* v. *Mariner*, 129 Wis. 544 [109 N.W. 574], the significant portions of a note read as follows:

" 'Four months after date the Northwestern Straw Works promise to pay to the order of F. G. Bigelow . . .

'The Northwestern Straw Works,
'E. R. Stillman, Treas.'
'John W. Mariner.' "

The court held that the signature "John W. Mariner" was not so placed as to bring the statute into play and make him an indorser. The court said: "This provision, by its very terms applies only to a case of doubt arising out of the location of the signature upon the instrument. Names are sometimes placed at the side, on the end, or across the face of the instrument, and thus a doubt arises as to whether the signer intended to be bound as a maker or an indorser, or perhaps as a guarantor, and to solve these doubts the section in question was evidently framed. It was to settle a doubt fairly arising from the ambiguous location of the name and applies to no other. In the present case there is no doubt of this nature. The signature of Mr. Mariner is placed in the usual and proper, in the only proper, place for a maker." (P. 575.)

The same view of this statute was enunciated in Illinois in 1930. A certain bearer note was originally executed by Charles Bidwell and Esther K. Bidwell as makers. When the holders sold the note, they added their signatures below those of the Bidwells. The court observed: "there is no ambiguity here as to the location or placing of the signature, or in fact in any other respect on the face of the instrument. From its face one conclusion only is deducible, namely, that appellant and his cosigners signed the note in the capacity of joint makers, and there is nothing in the proof regarding their intention that justifies a different conclusion." (*Peterson* v. *Swanson*, 259 Ill.App. 80, 83.)

Vermont construed and applied the statute in like manner in 1933. Four persons had placed their signatures on the face of a note, below its text, two on the right hand side and two to the left of the first two. The fact that two appeared to the left did not bring the statute into play. The statute,

"in terms, applies only to a case where a doubt arises from the ambiguous location of the signature upon the instrument, such as at the end or across the face of the instrument. It was intended to solve such a doubt, and no other. *Germania Nat. Bank* v. *Mariner*, 129 Wis. 544 [109 N.W. 574]. These defendants [the two who signed to the left] signed their names in the proper place for a maker, and the only thing indicated which is at all unusual (if such it may be called) is that they placed their signatures 'slightly to the left of the signatures of the original makers.' But this circumstance, alone, does not create such a doubt as is contemplated by the statute." (*Greenwood* v. *Lamson*, 106 Vt. 37 [168 A. 915, 916].)

Massachusetts differs in not limiting the application of the statute to cases where "an ambiguity results solely because of the place where a signature is placed upon an instrument." (*La Caisse Populaire Credit Union* v. *Cross* (1936), 293 Mass. 190 [199 N.E. 548, 551].) The view pioneered by Wisconsin is the more persuasive.

But this does not necessarily terminate this branch of the inquiry. There is some basis for the admission of extrinsic evidence to explain Ehrman's signature in a case like this where the payee is the plaintiff. The very fact that the note was prepared for the signature only of Frank and Annie Nolan is suggestive of a doubt. Were the Nolans originally to be the sole makers and Ehrman later included, or was the person who wrote the note unaware of the intention to include Ehrman as a maker, or was it the intention of the parties that Ehrman sign in some capacity other than a maker? ▪ It would appear that extrinsic evidence is admissible to explain an ambiguity in a negotiable instrument under the same circumstances that it is admissible to explain any other contract in writing. (*Steffen* v. *Refrigeration Discount Corp.*, 91 Cal. App.2d 494, 499 [205 P.2d 727]; *Trigg* v. *Arnott*, 22 Cal.App. 2d 455, 457 [71 P.2d 330].) Our case is somewhat like the Wisconsin case of *Germania Nat. Bank* v. *Mariner*, *supra*, 109 N.W. 574, in which John W. Mariner was permitted to prove that he signed as an officer (secretary) of the named promisor, "The Northwestern Straw Works." The note upon its face was ambiguous in that regard. Extrinsic evidence was admissible to resolve the ambiguity.

We do not find it necessary to determine whether extrinsic evidence was admissible in this case. (See *Williams* v. *Silverstein*, 213 Cal. 269, 276 [2 P.2d 165]; *Van Haaren* v. *Whitmore*, 2 Cal.App.2d 632, 634 [38 P.2d 829]; *Seth* v. *Lew*

*Hing*, 125 Cal.App. 729, 736 [14 P.2d 537, 15 P.2d 190], on that question.) The trial court admitted extrinsic evidence and that evidence supports the finding that Ehrman signed as a maker.

Plaintiff, the payee, testified that she had no agreement, oral or written, with Mr. Ehrman in connection with this note. She was not present when he signed the note. Ehrman testified that he had no agreement, oral or written, with the payee other than his signature appearing on the note.

Over objection that it was calling for oral testimony to vary the terms of a written contract, Ehrman was allowed to state the circumstances under which he signed the note. He testified that Mr. Nolan came to him in his office, put a paper on the desk and asked Ehrman if he would sign it; Ehrman read the paper and said yes he would sign it; Nolan then said: "Indorse it if you will. . . . I am going to give it to Mrs. Schaeffle for part payment of the business;" Mrs. Schaeffle was not present; Ehrman never talked to her about the note; when Nolan brought the paper to Ehrman it had already been signed by Nolan and his mother. Then the following questions were asked and answers given: "THE COURT: What did he say and what did you say? A. As near as I can remember, he said 'I have a note here for Mrs. Schaeffle I'm signing,' and I thought he said with his wife. He asked me if I would endorse the note. As near as I can remember that's what he asked me. Q. What did you say? A. I said I would. Q. What did you do? A. I endorsed it as he asked me. *Q. You mean you signed it? A. I signed it, yes.*" (Emphasis added.)

Clearly, the trial court was justified in finding that Ehrman signed as a maker. The witness said he meant that he "signed it" when he said he "endorsed it," and he signed in the place appropriate for a maker. These facts, plus the fact that the payee was not present during Ehrman's conversation with Nolan, nor when Ehrman signed, and that Ehrman had no agreement with the payee other than his signature appearing on the note, support the findings. Ehrman's deposition, taken earlier and introduced by him at the trial, additionally indicated that he was familiar with promissory notes and checks and knew that he signed in the place usual for a maker to sign. In his deposition he put greater emphasis upon the concept of "indorsing" when signing. At most, that tended to produce a conflict in his own testimony, which the trial court resolved against him.

*(2)* *Was Ehrman an accommodation party and as such discharged by plaintiff's giving an extension of time to the principal debtor without Ehrman's knowledge or consent?*

Plaintiff claims that Ehrman advanced this defense too late for consideration upon this appeal. Ehrman made no mention of it in his answer or during the taking of evidence. Instead, his contention then was that he signed as an indorser, not as a maker. According to the record before us, he claimed to be an accommodation maker when on September 18, 1951, he filed a request, dated September 14, to add to the findings of fact and conclusions of law which the plaintiff had prepared, a finding that Ehrman "was an accommodation party, known to be such to the plaintiff at the time." This was nearly two months after the taking of evidence upon the trial, July 25, 1951. He states that in his brief to the trial court, prior to decision and presumably after July 25, 1951, he requested permission to amend his answer "to conform with the proof" by pleading as an additional defense that he was an accommodation party. There is no indication that he made any application to reopen the trial of the case for the consideration of this issue. Without such reopening, plaintiff would be without the benefit of presenting evidence or of cross-examining Ehrman on that issue. Under such circumstances it was quite within the province of the trial court to deny the request. We find no abuse of discretion in such a denial.

Moreover, even if Ehrman had pleaded and proved that he was an accommodation maker, he would not thereby have escaped liability As a maker, whether an accommodation maker or not, he is one of the persons "who by the terms of the instrument is absolutely required to pay the same" and as such is "primarily" liable on the instrument. (Civ. Code, § 3266a.) An accommodation party "is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party." (Civ. Code, § 3110.) Accordingly, section 3201 of the Civil Code can have no application to him. It enumerates the cases in which a person "secondarily" liable is discharged. It has no application to a person "primarily" liable. As said in *Mortgage Guarantee Co.* v. *Chotiner*, 8 Cal.2d 110, at 122 [64 P.2d 138, 108 A.L.R. 1080], "one who appears as a primary party upon the face of a negotiable note, although in actuality a surety or accommodation maker, is not released by a binding extension agreement with the principal debtor made

without his consent.'' (See, also, *People's Finance & Thrift Co.* v. *Moon,* 44 Cal.App.2d 223, 224-225 [112 P.2d 24].)

Even if section 3201 did apply, its subdivision (6) would not be applicable because the payee made no ''binding'' agreement to extend the Nolans' time of payment or to postpone the payee's right to enforce the instrument. Asked if she made an arrangement with Mr. Nolan to take his checks that were postdated, the payee replied: ''The checks were not postdated. He sent them to me monthly, but Mr. Nolan had a little hard luck and asked me to hold them, which I did. I held three of them. They are still in existence.'' This does not indicate that the payee extended the time of payment or postponed enforcement for a particular period of time, or for a consideration; i.e., there was no ''agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument,'' no agreement that would bring subdivision (6) of section 3201 into play even if Ehrman were a party ''secondarily'' liable, which he is not.

Finally, we would observe that we have found in the Negotiable Instruments Act no provision which deals with the discharge of persons primarily liable, except section 3200 which deals with the discharge of the instrument. Section 3200 does not list the extension of time to a party accommodated as the discharge of an accommodation party.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.