[Civ. No. 22724.  Second Dist., Div. Three.  July 28, 1958.]

MARSH WALL PRODUCTS, INC. (a Corporation), Respondent, v. HENRY MARCUS BUILDING SPECIALTIES et al. (a Partnership), Defendants; OSCAR ALTMAN, Appellant.

372

Mathon & Redlich and Benjamin D. Mathon for Appellant.

Littlejohn, Callister & McNabb and E. Talbot Callister for Respondent.

WOOD (Parker), J.—Action on seven promissory notes and to recover the purchase price of building material sold. The action was against Henry Marcus, Oscar Altman, and three other persons, individually and as partners. Henry Marcus Building Specialties, the partnership, was also named as a defendant. In a nonjury trial, judgment was in favor of plaintiff. Oscar Altman appeals from the judgment.

Appellant contends that certain findings are not supported by the evidence. Generally stated, appellant's argument is that plaintiff knew that appellant had withdrawn from the partnership and that the remaining partners had assumed his obligations; and that, in view of such knowledge, the act of plaintiff in extending time for payment of the partnership obligations discharged appellant from liability.

Prior to March 18, 1954, Henry Marcus, Oscar Altman, and three other persons became partners in the business of selling building materials under the partnership name of Henry Marcus Building Specialties. On March 18, 1954, Henry Marcus signed, and delivered to plaintiff, seven promissory notes, each for $566.35, payable respectively on the first of each month commencing June 1, 1954. The notes were signed, "Henry Marcus Building Specialties By Henry Marcus."

On April 23, 1954, Altman and the other partners entered into a written agreement whereby Altman withdrew from the partnership and Henry Marcus and two of the other partners agreed to assume the partnership obligations of Altman. On May 10, 1954, a notice of dissolution of the partnership was published in a newspaper and, also on that day, the notice was filed in the office of the county clerk. The notice, which was dated April 29, 1954, stated that the business would be conducted by the other partners and that they would pay all debts of the partnership.

About June 15, 1954, plaintiff and other creditors of the partnership, and Henry Marcus acting on behalf of the partnership, signed an agreement which provided that plaintiff and the other creditors extended the time of payment of their claims against the partnership for a period ending December 31, 1954, and thereafter for such successive periods of 90 days each as the creditors' committee (referred to in the agree-

ment) deemed advisable in order to carry out the purposes of the agreement.

This action was filed on August 5, 1955.

The first cause of action was for the recovery of $3,964.45 due upon seven promissory notes. The second, third, and fourth causes of action were, respectively, for the recovery of amounts due: (1) for the reasonable value of merchandise sold; (2) upon an open book account; and (3) upon an account stated.

Defaults of the partnership, Henry Marcus, and two other defendants were entered. One defendant was not served. Altman filed an answer.

The court made detailed findings of fact which were in substance the same as the facts hereinabove set forth regarding the partnership, the notes, the withdrawal agreement, the notice of dissolution, and the extension agreement. The court also found that Marcus executed the notes, within the scope of his authority, as agent for the defendants; plaintiff did not know, until after the complaint was filed, that Altman had withdrawn as a partner; plaintiff did not have knowledge of the agreement between Altman and the other partners, whereby Altman withdrew from the partnership and the remaining partners assumed the debts; and that the extension agreement did not prejudice Altman's rights. The court also found that the defendants were indebted to plaintiff for $2,075.31 on each of the other causes of action (merchandise sold, open book account, and account stated).

A copy of the judgment is not in the record, but it will be assumed that the judgment was in accordance with the direction for judgment as stated in the conclusions of law. Said direction was that plaintiff was entitled to judgment against the partnership, Marcus, Altman, and the two defendants whose defaults were entered, as follows: $3,964.45, on the first cause of action; and $2,075.31, on the second, third, and fourth causes of action; and for $600 attorneys' fees.

Altman relies upon section 15036, subdivision (3), of the Corporations Code, which provides: ''Where a person agrees to assume the existing obligations of a dissolved partnership, the partners whose obligations have been assumed shall be discharged from any liability to any creditor of the partnership who, knowing of the agreement, consents to a material alteration in the nature or time of payment of such obligations.''

Appellant (Altman) contends that the evidence does

not support certain findings, namely: that plaintiff did not know, until after the complaint was filed, that Altman had withdrawn as a partner; and that plaintiff did not have knowledge of the agreement between Altman and the other partners, whereby Altman withdrew from the partnership and the remaining partners assumed the debts. In support of his contention he refers to the testimony of his witnesses, Mr. Vind and Mr. Pfaelzer.

Mr. Vind, an employee of the partnership, testified that in the first or second week of May, 1954, he went to plaintiff's office and told Mr. Crampton, plaintiff's division manager, that Altman was no longer a partner in the partnership. He testified further that in the first part of June, at the first meeting of creditors of the partnership, he told the creditors that Altman was no longer a part of the company. He also testified that Mr. Page, plaintiff's credit manager, attended that meeting; subsequently a creditors' committee was formed; he (witness) told the committee that Altman was no longer a part of the company and that "we were buying back his advances to the company on a payment program"; Mr. Pfaelzer (attorney for the partnership) advised the committee as to the contents of the agreement of April 23, 1954, between Altman and the other partners; and that the creditors' attorney (apparently not referring to Mr. Pfaelzer) read the agreement.

Mr. Pfaelzer, attorney for the partnership, testified that he attended the first meeting of the creditors on June 3, 1954; Mr. Page attended the meeting as a representative of plaintiff; he (witness) believed that, at the meeting, he told the representatives of the creditors of the changes that had been made in the partnership organization; at the meeting there was a discussion as to the manner in which the partnership could be operated to satisfy the obligations of the business, and there was "reference to Oscar Altman as a person who had departed from the company"; he (witness) attended the second meeting of the creditors on June 10, 1954; he believed that Mr. Page was there; at the meeting there was "reference to his [Altman's] withdrawal from the business"; and at the meeting a creditors' committee was elected.

. Altman argues that the testimony of those witnesses shows that plaintiff had knowledge that he had withdrawn from the partnership and that the other partners intended to continue the business for the purpose of paying the debts of the partner-

ship; that from such knowledge, notice of the agreement between Altman and the other partners must be imputed to plaintiff; that the testimony of Mr. Vind shows that the creditors' committee knew the contents of the agreement, and that such knowledge must be imputed to plaintiff.

In addition to the testimony of those witnesses, there was testimony by Mr. Crampton, a witness called by plaintiff. He testified that he is division manager of plaintiff; in the latter part of April, or in May, 1954, Mr. Vind came to his office; he (witness) did not remember any conversation relating to Altman or to the withdrawal of Altman as a partner; he did not know, until after the commencement of the action, that Altman had withdrawn from the partnership; in June, 1954, Mr. Page was manager of plaintiff's Los Angeles office; Mr. Page was not employed by plaintiff at the time of the trial; and he (witness) did not know whether a representative of plaintiff attended any meetings of the creditors' committee.

A question of fact was presented as to whether plaintiff had knowledge that Altman had withdrawn from the partnership, and that the remaining partners had assumed the debts of the partnership. The burden of proving that plaintiff had such knowledge was on Altman. (See *Epley* v. *Hiller,* 128 Cal.App.2d 100, 103-104 [274 P.2d 696].) The findings were to the effect that Altman had not carried the burden of such proof. The evidence was sufficient to support the findings that plaintiff did not know that Altman had withdrawn and did not know that the remaining partners had assumed the debts.

Altman contends that the evidence does not support the finding that Marcus executed the notes as agent for the defendants and within the scope of his authority.

Section 15009, subdivision (1), of the Corporations Code provides: "Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority."

Altman argues that the evidence shows that Marcus did not have authority to execute the notes for the partnership

and that plaintiff knew that Marcus did not have such authority. He argues further that since there was no evidence that partnership notes had been executed previously in favor of plaintiff, there was no evidence that the notes involved here were executed within the usual course of business between plaintiff and the partnership. In support of his argument, Altman refers to his testimony and to 14 checks which were received in evidence. Altman testified that "no one partner" had authority to execute a note on behalf of the partnership. The 14 checks, referred to, were payable to plaintiff and were signed by two persons on behalf of the partnership. Even if it be assumed that plaintiff observed that there were two signatures on the checks, the court was not required to infer that plaintiff knew how many signatures were required on a note. It is to be noted that 13 of the 14 checks bore dates which were subsequent to the date of the notes (March 18, 1954). Mr. Crampton (plaintiff's western division manager) testified that the notes were signed by Marcus in his presence; the notes were given to cover the previous account of the partnership for materials, and for the purpose of obtaining additional materials on credit; he (witness) was never advised that two signatures were required on a note of the partnership. The evidence supports the finding that Marcus executed the notes, within the scope of his authority, as agent of the defendants.

Altman contends that the evidence does not support the finding that about July 1, 1954, plaintiff furnished merchandise of the reasonable value of $2,075.31 to defendants, upon an open book account. Plaintiff introduced in evidence, without objection by Altman, a copy of a statement of account, dated July 1, 1954, for merchandise sold to the partnership. The statement covered a period from March 30 to May 25, 1954, inclusive, showing that a balance of $2,075.31 was unpaid. Mr. Crampton testified to the effect that after the notes were executed, plaintiff sold merchandise to the partnership on an open book account; the statement, received in evidence, was a statement of the account; the dates listed in the statement were the dates of the invoices; the prices listed therein were the invoice prices; and the amounts listed therein were unpaid. There was no evidence on behalf of Altman (the only defendant who filed an answer) to the effect that the merchandise was not ordered or that it was not of the reasonable value as shown on the statement. The finding was supported by the evidence.

■ Altman contends further that, in any event, there was no liability on his part for merchandise delivered after he withdrew from the partnership (about April 16, 1954) and after his withdrawal was reported to plaintiff about May 15, 1954. It appears from the statement of account and from the testimony of Mr. Crampton that the charge for merchandise, delivered after April 23, was $957.70. Section 15035 of the Corporations Code provides: "(1) After dissolution a partner can bind the partnership . . . (b) By any transaction which would bind the partnership if dissolution had not taken place, provided, the other party to the transaction: I. Had extended credit to the partnership prior to the dissolution and had no knowledge or notice of the dissolution . . . ." Mr. Crampton testified that plaintiff had extended credit to the partnership prior to dissolution. As above stated, the court found that plaintiff did not know that Altman had withdrawn from the partnership until after the filing of the complaint. The evidence supports the finding that Altman was indebted to plaintiff on the open book account.

■ Appellant also contends that the evidence does not support the finding that a demand was made upon him for payment of the notes and the account. A demand, prior to commencing the action, was not necessary. In his answer, Altman denied any liability on the notes or the account. It is clear from his answer that if a demand had been made it would have been refused. ■ In *Roadman* v. *Traeger*, 5 Cal.App.2d 749 [43 P.2d 564], it was held (p. 750) that where "it is plain from the answer" that a demand would have been refused, a defendant may not object that no demand was made. ■ Under the circumstances, the finding with reference to a demand was of no significance.

■ Altman contends that the court erred in refusing to receive in evidence a copy of a letter, dated May 16, 1954, which was written by Mr. Vind (employee of the partnership) to the attorneys for the partnership. The letter stated that, attached to the letter, there was a list of creditors who had been contacted regarding the financial problem of the partnership, and that those creditors had been told "of the withdrawal of Oscar Altman" from the partnership. Plaintiff's name was on that list of creditors. Altman argues that since Mr. Vind was questioned closely on cross-examination regarding his conversation with Mr. Crampton (about withdrawal of Altman) the letter was admissible to refute an inference that such con-

versation was of recent fabrication. There was no statement, at the time the letter was offered in evidence, that it was offered to refute such an inference. Altman's attorney stated, at that time, that it was offered as a memorandum in confirmation of Mr. Vind's testimony. The court did not err in sustaining the objection.

■ Altman also contends that the court erred in denying his motion to strike out all testimony on behalf of plaintiff relating to the causes of action upon an open book account, and for the reasonable value of merchandise sold. He argues that since it was alleged in the complaint that certain transactions occurred on or about July 1, 1954, and since the evidence referred to transactions extending from March 30 to May 25, 1954, there was a material variance between the pleading and the proof. During the argument on the motion to strike the testimony, the judge asked Altman's attorney if he desired a continuance of the matter. The attorney replied that if the judge denied the motion the defendant would go forward with the other defenses. The complaint was filed August 5, 1955. It was alleged in the complaint, as follows: (1) that within two years immediately preceding the commencement of the action, to wit, on or about July 1, 1954, the defendants became indebted to plaintiff for merchandise sold; (2) that within four years immediately preceding the commencement of the action, to wit, on or about July 1, 1954, defendants became indebted to plaintiff upon an open book account for merchandise of the reasonable value of $2,075.31. There was no demand for a bill of particulars. The court did not err in denying the motion to strike the testimony.

■ Altman contends that attorney's fees should not have been awarded. His argument is that there was no allegation or proof that plaintiff paid attorney's fees, and that there was no evidence as to the legal services rendered. The notes provided for payment of attorney's fees reasonably incurred in enforcing payment of the notes. In the prayer of the complaint, plaintiff asked for attorney's fees. Plaintiff was represented by attorneys in commencing and prosecuting the action. The record of the proceedings were before the trial judge. It was not necessary to present testimony as to the extent and reasonable value of legal services rendered. (See *Lewis & Queen* v. *S. Edmondson & Sons,* 113 Cal.App.2d 705, 708 [248 P.2d 973].) The court did not err in allowing attorney's fees for legal services pertaining to the notes.

In view of the above conclusions, which require affirmance of the judgment, it is not necessary to discuss other contentions on appeal.

The judgment is affirmed.

Shinn, P. J., and Patrosso, J. pro tem.,* concurred.

A petition for a rehearing was denied August 22, 1958.

*Assigned by Chairman of Judicial Council.