John HARTMAN, Appellant,

v.

Ernest R. UTLEY, Trustee in Bankruptcy of the Estate of Schroeder & Company, etc., Bankrupt, Appellee.

No. 18841.

United States Court of Appeals Ninth Circuit.

Aug. 10, 1964.

Luther L. Jensen, Anderson, McPharlin & Conners, Los Angeles, Cal., for appellant.

Herman L. Glatt, Quittner, Stutman, Treister & Glatt, Los Angeles, Cal., for appellee.

Before BARNES, HAMLEY, and BROWNING, Circuit Judges.

BROWNING, Circuit Judge.

## I

Schroeder & Company furnished a surety bond to the State of California, pursuant to California Government Code, §§ 4200–4208, to guarantee payment of laborers and materialmen on a public works project for which Schroeder was contractor. Founders Insurance Company, appellant's assignor, executed the bond. In return, Schroeder agreed, among other things, to indemnify Founders against "all loss, costs, damages, expenses and attorneys' fees" incurred in consequence of its execution of the bond. Nonetheless, Founders' claim for reasonable attorneys' fees necessarily incurred[1] in satisfying its obligation under the bond after Schroeder's bankruptcy was disallowed by the bankruptcy court.

There is nothing in the character of an agreement to pay attorneys' fees that renders it suspect in bankruptcy. If the agreement is valid under local law, a claim based upon it is provable in bankruptcy if it satisfies the requirements of section 63 of the Bankruptcy Act, 11 U.S.C.A. § 103. Security Mortgage Co. v. Powers, 278 U.S. 149, 154, 49 S.Ct. 84, 73 L.Ed. 236 (1928).

A debtor's undertaking to reimburse his surety's reasonable expenditures for attorneys' fees is enforceable in California. See, e. g., United States Fid. & Guar. Co. v. Smith, 97 Cal.App. 492, 275 P. 878 (Dist.Ct.App.1929), cited with approval in Arenson v. National Auto. & Cas. Ins. Co., 45 Cal.2d 81, 84, 286 P.2d 816, 819 (1955). Founders' claim based upon that agreement was provable under subsection (4) of section 63, sub. a as one "founded upon * * * a contract," and under subsection (8) as one of those "contingent contractual liabilities" which may be liquidated and fixed within a reasonable period, as required by section 57, sub. d, 11 U.S.C.A. § 93, sub. d (Founders' claim was, in fact, fixed and liquidated prior to its rejection).[2]

Founders' claim for its own attorneys' fees was rejected on the ground that the claim was barred by section 57, sub. i (11 U.S.C.A. § 93, sub. i), which provides that a surety required to pay his principal's debt may prove a claim in the name of the creditor, and be subrogated to the latter's rights.[3] The bankruptcy court held that under this provision "the surety proves not his own debt but the debt of the original creditors"; and since the obligation incurred by

---

1. The district court's finding that the services were necessary and the fees reasonable is not challenged.

2. Decisions disallowing claims for attorneys' fees because the contingency upon which the fees became payable occurred after the filing of the petition in bankruptcy (collected in Anno., 161 A.L.R. 972, 973–74 (1946); Anno., 8 L.Ed.2d 894, 935 nn. 10, 10.1 (1963); 2 Remington on Bankruptcy 218–19 (Henderson rev. 1956)) antedate the adoption in 1938 of subsection (8) of § 63, sub. a. They were based upon the prior requirement of the Act that provable claims must represent "a fixed liability * * * absolutely owing at the time of the filing of the petition." In view of the adoption of subsection (8), "claims for stipulated attorney's fees should * * * not be disallowed because bankruptcy intervened * * * before any legal services were rendered. * * *" 3 Collier on Bankruptcy ¶ 63.15 at 1853 (14th ed. 1961).

3. Bankruptcy Act, § 57, sub. i, 11 U.S. C.A. § 93, sub. i:
"Whenever a creditor whose claim against a bankrupt estate is secured, in whole or in part, by the individual undertaking of a person, fails to prove and file that claim, that person may do so in the creditor's name, and he shall be subrogated to the rights of the creditor, whether the claim has been filed by the creditor or by him in the creditor's name, to the extent that he discharges the undertaking except that in absence of an agreement to the contrary, he shall not be entitled to any dividend until the amount paid to the creditor on the undertaking plus the dividends paid to the creditor from the bankrupt estate on the claim equal the amount of the entire claim of the creditor. Any excess received by the creditor shall be held by him in trust for such person."

Founders for its own attorneys' fees obviously was not one owed by the bankrupt contractor to the labor and material claimants, Founders could not base a claim upon it.

■ Section 57, sub. i relates solely to the problem of proof and allowance of a surety's claim based upon his contingent liability for the principal's debt. The primary purpose of section 57, sub. i is to avoid proof of two claims, one by the creditor and a second by the surety, with a consequent danger that double dividends might be paid upon what was in fact only a single debt. Fidelity & Deposit Co. v. Fitzgerald, 272 F.2d 121, 128 (10th Cir. 1959); In re Miller, 105 F.2d 926, 929 (2d Cir. 1939); 3 Collier on Bankruptcy 331–37 (14th ed. 1961); Maclachlan on Bankruptcy 138 (1956).

■ But Founders' claim for its own attorneys' fees was not a debt owed to another by the bankrupt and secured by Founders' undertaking. Founders claimed these outlays not as a surety but in its own right. No double claim against the bankrupt estate with respect to these fees was possible; only Founders had a claim against the bankrupt, for the latter had contracted with no one else to pay them. Professor Moore's comment, although directed to a different problem, is pertinent here: "Since § 57i only deals with the rights of a surety where there is a principal debtor who for some reason failed to prove the claim, it cannot very well be said to apply to a situation where there is no creditor, other than the surety himself, entitled to the claim and to its proof." 3 Collier on Bankruptcy 338 (14th ed. 1961).

## II

The bankruptcy court also disallowed Founders' claim for the attorneys' fees, interest, and costs which Founders was required to pay to laborers and materialmen, after Schroeder's bankruptcy, in suits brought against Founders on its bond.

■ A substantial argument can be made that the obligation which a surety undertakes in a bond executed under California Government Code, §§ 4200–4208 is a primary and direct obligation to the laborers and materialmen, independent of any contract between them and the contractor;[4] and that since the rights of the laborers and materialmen against the surety are not limited to or dependent upon their rights against the contractor, neither should the surety's claim against the contractor on the latter's agreement of indemnity be so limited. Furthermore, making Founders' claim provable would render it clearly dischargeable, and thus serve the Bankruptcy Act's prime purpose "to relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." Williams v. United States Fid. & Guar. Co., 236 U.S. 549, 554–55, 35 S.Ct. 289, 291, 59 L.Ed. 713 (1915). Moreover, substantial equities support Founders' claim, for Founders sustained a real pecuniary loss upon an undertaking which was prerequisite to the contractor's right to perform its public works contract, and hence Founders contributed to the creation of the bankrupt estate's distributable funds.

■ Nonetheless, to free Founders from the strictures of section 57, sub. i as to these claims would frustrate the section's purpose. Founders' liability under its bond, and the contractor's agreement to indemnify, included, of course, the principal amounts due for labor

4. Cases are collected at 41 Cal.Jur.2d §§ 68–70, 76, 79. See Western Concrete Structures Co. v. James I. Barnes Constr. Co., 206 Cal.App.2d 1, 10, 23 Cal.Rptr. 506, 511–12 (Dist.Ct.App. 1962); Powers Regulator Co. v. Seaboard Sur. Co., 204 Cal.App.2d 338, 22 Cal.Rptr. 373 (Dist.Ct.App.1962); Lewis & Queen v. Edmondson & Sons, 113 Cal. App.2d 705, 248 P.2d 973 (Dist.Ct.App. 1952); Pneucrete Corp. v. United States Fid. & Guar. Co., 7 Cal.App.2d 733, 46 P.2d 1000 (Dist.Ct.App.1935).

and material, as well as the related costs. If Founders could prove a claim in its own name based upon its anticipated liability as to the latter, it could also as to the former; indeed, the claim which it submitted included both.[5] Those who supplied the labor and material could, of course, file their own claims for the principal amounts due them. They might also, at least if their contracts with the debtor so specified, claim their anticipated costs of collection, including attorneys' fees.[6] And if their claims were secured and the security were ample, or if the administration of the bankrupt estate resulted in a surplus (a possible, if unlikely, eventuality), they might also recover post-bankruptcy interest.[7]

Thus, if Founders were permitted to prove a claim with respect to their contingent liability as to these same items the possibility would exist that two claims might be filed and two dividends might be paid upon claims not mutually exclusive. An alert compliance with the proviso of section 57, sub. d would bar double allowance and, ultimately, double dividends, on the same underlying debt. But section 57, sub. i reflects a policy choice to avoid the risk at the outset by requiring the filing of a single claim in the creditor's name. Nor can it make a difference that the creditors' claims may ultimately prove unallowable, as the stipulation of the parties suggests to be true here. Where double claims are possible, "the established rule in bankruptcy, that proof in the creditor's name under section 57i is the exclusive remedy of the surety, eases the task of the bankruptcy administration by dispensing with need

for alertness on this point." Maclachlan on Bankruptcy 138 (1956).

Reversed and remanded for further proceedings not inconsistent with this opinion.

---

5. The trustee did not cross-appeal from the allowance of Founders' claim so far as it reflected payment of the principal sums due laborers and materialmen; no doubt because Founders was clearly entitled to subrogation as to these amounts, and could have amended the claim to substitute the names of the creditors for its own. Fidelity & Deposit Co. v. Fitzgerald, 272 F.2d 121, 129–30 (10th Cir. 1959).

6. Such contracts are enforceable under California law (see, e. g., Ghirardelli v. Peninsula Properties Co., 16 Cal.2d 494, 499, 107 P.2d 41, 44 (1941); Marsh Wall Prods., Inc., v. Henry Marcus Bldg. Specialties, 162 Cal.App.2d 371, 380, 328 P.2d 259, 264 (Dist.Ct.App.1958)), and would be provable under § 63, sub. a (4) and (8). 3 Collier on Bankruptcy 1845–54 (14th ed. 1961).

7. 3 Collier on Bankruptcy 1858–63 (14th ed. 1961).