[Civ. No. 28451.   Second Dist., Div. Three.   May 26, 1966.]

HOWARD ENGELMAN et al., Plaintiffs and Appellants, v. HANK GORDON, Defendant and Respondent.

Harold Rubins for Plaintiffs and Appellants.

Fierstein & Dolin and Harvey Fierstein for Defendant and Respondent.

FORD, J.—The plaintiffs have appealed from a judgment in favor of the defendant Hank Gordon in an action on two promissory notes executed by Trailer Park Enterprises, Inc., a corporation, and bearing the signature of Mr. Gordon. Each note represented a portion of the purchase price of one of two lots which were purchased from the plaintiffs by the corporation and was secured by a deed of trust of the property subordinate to two other deeds of trust. Prior to the rendition of judgment in the case, each lot was sold pursuant to the terms of a prior deed of trust. In their complaint the plaintiffs alleged that Mr. Gordon was a guarantor of each note and not a maker thereof.

The findings of fact of the trial court were in part as follows: 1. The plaintiffs' security in the form of the deeds of trust had become valueless. 2. Mr. Gordon was not a purchaser of either parcel of real property. He was the sole stockholder of the purchasing corporation. 3. "It is true that plaintiffs made demand upon defendant [Hank Gordon] and upon Trailer Park Enterprises, Inc., for the payment of the notes and it is true that plaintiffs informed the defendant that said notes were not paid when due and it is true that defendant knew that said notes were not paid when due." 4. "It is true that the plaintiffs believed and intended the signature of the defendant Hank Gordon as it was placed upon said promissory notes to be a guarantee by the said defendant Hank Gordon, and it is true that the defendant Hank Gordon knew that the plaintiffs believed and intended the signature of the defendant Hank Gordon, as it appeared on said promissory notes, to be a personal guarantee of said promissory notes by the defendant Hank Gordon." 5. The plaintiffs would not have entered into the transaction without the personal guarantee of the notes by the defendant Hank Gordon and the defendant Hank Gordon

so knew. 6. The defendant Hank Gordon was an accommodation maker of each of the promissory notes.

One of the conclusions of law of the trial court was that sections 580a, 580b and 580d of the Code of Civil Procedure constituted "a complete defense to the action."

In the escrow instructions it was provided that title was to be conveyed to "Gordon Building Corp. or nominee." Trailer Park Enterprises, Inc., was thereafter designated as the nominee. The instructions were executed on behalf of Gordon Building Corp. by Hank Gordon as president.

Each promissory note was entitled "Note Secured by Deed of Trust." A portion of the body thereof was as follows: "May 23, 1962, after date, for value received, I promise to pay to Howard Engelman and Betty Joy Engelman, Husband and Wife, or order, at Los Angeles the sum of Ten Thousand Seven Hundred Fifty and no 100 DOLLARS, with interest from May 23, 1961 until paid at the rate of seven (7%) per cent per annum, payable quarterly." The defendant Gordon's signature was placed to the left of the signature made on behalf of Trailer Park Enterprises, Inc., and over the typewritten words "HANK GORDON—Personaly [sic]." (On one of the notes the last word was "Personnaly.") The deed of trust in each instance was executed only by the purchasing corporation. The escrow instructions showed that the secured obligation in each instance was for the balance of the purchase price of the real property. Since the instruments formed parts of one transaction, they must be read and considered together. (*Collins* v. *Home Sav. & Loan Assn.,* 205 Cal.App.2d 86, 98 [22 Cal.Rptr. 817] ; *Mutual Bldg. & Loan Assn.* v. *Beers,* 117 Cal.App. 200, 204 [3 P.2d 565] ; see *Roberts* v. *Reynolds,* 212 Cal.App.2d 818, 824 [28 Cal.Rptr. 261].)

It is, of course, obvious that if by signing each promissory note Hank Gordon subjected himself to no greater liability with respect to a personal judgment than did the corporation which was the purchaser of the property,[1] there was no purpose to be served in having his signature on the note. Under the circumstances thus presented there was an

[1] At the time of the execution of the notes and deeds of trust, section 580b of the Code of Civil Procedure was in part as follows: "No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given to secure payment of the balance of the purchase price of real property."

ambiguity as to the nature of the obligation undertaken by the defendant Hank Gordon. Since the contents of the face of each note did not preclude a construction in harmony with the contention of the plaintiffs, extrinsic evidence bearing upon the issue of the nature of the obligation undertaken by Hank Gordon was admissible.[2] (*Reid* v. *Overland Machined Products,* 55 Cal.2d 203, 210 [10 Cal.Rptr. 819, 359 P.2d 251]; *Roberts* v. *Reynolds, supra,* 212 Cal.App.2d 818, 825; see *Schaeffle* v. *Nolan,* 115 Cal.App.2d 651, 655 [252 P.2d 732, 35 A.L.R.2d 1027].)

It was stipulated that the typewritten words under Mr. Gordon's signature on the notes were written on Mr. Gordon's typewriter. The escrow officer testified that the notes were taken from his office and were returned with Mr. Gordon's signature thereon. He further testified as follows: "Q. BY MR. RUBINS [attorney for plaintiffs] : Now you have stated on cross-examination that at the time of this initial meeting and prior to your preparation of the actual escrow instruction, you were told that the buyer in that escrow would be Gordon Building Corporation, or its nominee, is that correct? A. That is correct. Q. Now were you told in Mr. Gordon's presence what Mr. Gordon's personal capacity would be in this escrow, if any? A. Well, we were told that he was going to sign—he was going to back up the deal, he was going to sign—he was going to co-sign it personally. Q. I see. That is your best recollection of the language that was expressed to you? A. I do not recall the specific recollection, but— Q. Is that your best recollection of the substance of what was said to you at that time? A. Yes; that is correct. Q. And that Mr. Gordon was present at the time of that discussion? A. That is correct. . . . Q. BY MR. RUBINS: Now you also stated on cross-examination that you had two conversations with Mr. Engelman relating to the subject matter of Mrs. Gordon's not signing the . . . documents. Now, can you tell us, as best you can remember, what you stated to Mr. Engelman in the first of these conversations? A. Yes. I told Mr. Engelman that it would not be possible. We

---

[2]The nature of the problem presented in the case was clearly recognized by the trial court in its pretrial conference order. Therein it was ordered that "counsel present to the trial Judge, previous to the commencement of trial, a memorandum of points and authorities covering the following: (1) The parol evidence rule with reference to extrinsic proof and parol evidence establishing the true status of the defendant Gordon as the party to the promissory notes; (2) the liability of (a) defendant Gordon as comaker; (b) defendant Gordon as guarantor; (c) defendant Gordon as accommodation maker or *endorser*." (Italics added.)

would be informed by Mr. Gordon that it would not be possible for Mrs. Gordon to meet the requirement of the escrow and that she could not— . . . that there was some sort of a trust involved that prevented her from executing anything concerning his business. Q. . . . And that is the substance of what you stated to Mr. Engelman, is that right? A. That is correct. . . . Q. And is it a fact, then, that Mr. Gordon had told you this? A. Yes." With respect to an escrow instruction signed by Hank Gordon as president of "G.B.C.," the body of which was "The Deeds of Trust in this escrow shall be personally guaranteed and executed by Hank Gordon", the escrow officer testified as follows: "Q. By Mr. Rubins: . . . when Mr. Gordon signed this in your office and in your presence, did he make any objection to you about its contents? . . . The Witness: As far as I know, there was no objection. I do not recall any objection to signing it."

The plaintiff Howard Engelman testified in part as follows: "I called Mr. Gordon early in May of 1962, about three weeks before the notes were to become due and I said, 'Hank, can you tell me if these notes are going to be paid off on their due date?' And he said, 'Everything will be taken care of satisfactorily. Don't be concerned.' . . . A couple—a week or so later I called him again and I said, 'Hank, there is a situation that has come to me and I want to be sure that these funds will be available. Can you tell me if this note will be paid off on the date of it, so that I can perhaps make preparation or make a commitment.' And at this time he said, 'There is a problem because . . . Roger Schwimmer [who had signed the notes on behalf of Trailer Park Enterprises, Inc., as its secretary] is in the process of getting a divorce and is not willing to put up the cash for it, insofar as there is some involvement about who is producing the cash and the divorce agreement and he said it looks like it may be delayed a while.' . . . I kept calling him to find out what is going to happen. For a while I received no return on the calls and I believe I had one more conversation. Gordon was the only representative of Trailer Park I knew how to get in touch with and so I reached him once more at his office and he said, 'Well, it will probably work out,' he said, 'but it is going to take time.' " That conversation was either a few weeks before or after the date upon which the notes were due.

Mr. Engelman further testified that after the maturity of the notes he talked to the defendant Hank Gordon and asked him, "Hank, are the notes going to be paid off?" Mr. Gordon

replied, "My attorney has advised me that I do not have to pay these notes; that I am not liable because of the way the thing was drafted and I think if you want to try to get payment, sue me or if the Court orders me to pay, then I will have to pay." He testified that Mr. Gordon was present on the occasion when the sale of the property was conducted under the terms of the prior deeds of trust. On cross-examination, Mr. Engelman testified that he never made a written demand for payment upon Trailer Park Enterprises, Inc. He served no written notice of dishonor on Mr. Gordon.

The defendant Hank Gordon testified that on the occasion of the preparation of the escrow instructions by the escrow officer there was conversation with respect to the matter of the inclusion of a provision as to a nominee to receive title to the real property. He related the conversation as follows: "A. When the dictation of the escrow was given to the escrow officer, I had asked that the vesting of the buyer in that escrow be Gordon Building Corporation or nominee, at which time the two brokers, one of the two . . . stated that this would not be approved by the seller as you have an intelligent professional real estate man whom we have convinced that you have a good buyer and therefore he would want to know who the nominee is. Then Mr. Bershin [real estate broker] said—mentioned that if you are going to have a nominee, to make sure of that, that they would like Hank Gordon's personal signature. . . . Q. By Mr. FIERSTEIN [attorney for defendant]: And it was at this time that the words were put in the escrow, is that correct, with respect to Hank Gordon personally co-signing? A. This was the results of my insistence of a nominee."[3]

In the determination of the nature of the obligation, if any, undertaken by the defendant Hank Gordon in affixing his signature to each note, the law governing this court is as stated in *Parsons* v. *Bristol Development Co.*, 62 Cal.2d 861, at page 865 [44 Cal.Rptr. 767, 402 P.2d 839]: "It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence. Accordingly, 'An appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence [citations], where there is no conflict in the evidence [citations], or a

---

[3]The escrow instructions contained the following language: "Purchase money Deed of Trust is to be co-signed by Hank Gordon, personally." It is to be noted that it was further stated that "Purchase money Deed of Trust is to be payable one year from date. . . ." It is thus clear that the parties were not precise in their use of language.

determination has been made upon incompetent evidence [citation].' (*Estate of Platt*, 21 Cal.2d 343, 352 [131 P.2d 825]. . . .)"

▇ Since there is no conflict in the extrinsic evidence, the duty of this court is to make an independent determination of the meaning of the notes with respect to the undertaking of Mr. Gordon. The interpretation should be such as will make the contractual undertaking "lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." (Civ. Code, § 1643; see *Harris* v. *Klure*, 205 Cal.App.2d 574, 578 [23 Cal.Rptr. 313].) ▇ In the present case Mr. Gordon was not a purchaser of the real property and his signature added nothing of value unless he thereby undertook an independent obligation with respect to the debt which was represented by each note. It is a reasonable inference that the parties intended that his signature would create such an independent obligation inasmuch as the sellers, as Mr. Gordon knew, were not willing to permit the Gordon Building Corp. to be free to designate the person in whom title should be vested unless they had Mr. Gordon's personal undertaking upon which to rely in the event that the nominated purchaser failed to pay the notes. The conclusion that the liability of the defendant Gordon was that of an endorser (see *Bridge* v. *Ruggles*, 202 Cal. 326, 328 [260 P. 553]) is not precluded by the fact that Mr. Gordon chose to put his signature on the left-hand side of the bottom of the face of the note since his signature was intended by the parties to the transaction to be an endorsement. (See *Peoples State Bank* v. *Penello*, 59 Cal.App. 174, 184 [210 P. 432]; 8 Cal.Jur.2d, Bills and Notes, § 59.) ▇ As expressed in 11 American Jurisprudence, Second Edition, Bills and Notes, section 212: "There is a customary place for the signature of parties to an instrument according to whether they are makers or drawers or indorsers, makers or drawers signing to the right at the bottom of the face of the bill or note and indorsers signing on the back. However, the place of signature does not determine the character of the signer. This is determined by the purpose of signing. ▇ The extent of the obligation assumed in and by promissory notes or bills of exchange ought to be determined between the parties contracting, as in other contracts, by the intention of the parties rather than by the particular place where one of the parties has placed his signature. ▇ Signing in an unusual place requires proof to disclose the capacity in which the instrument

was signed, but has no other effect. Thus, an indorser may sign on the face of the instrument where he labels his signature as such or makes clear his intent. A signature so placed that it is not clear in what capacity the person making it intended to sign makes the signer an indorser.''

The determination that the defendant Gordon's liability is that of an endorser is not affected by the fact that the parties used the words ''personally guaranteed'' in the course of the escrow. As said in *Meyer* v. *Moore,* 72 Cal.App. 367, at page 373 [237 P. 550] : ''The words 'guaranty' or 'guarantee' do not always import a contract of guaranty.'' The use of such language is not inconsistent with the conclusion that the parties intended that the undertaking of Gordon should be separate and distinct from the obligation of the purchaser of the property. (See *Stephenson* v. *Lawn,* 155 Cal.App.2d 669, 670-671 [318 P.2d 132].)

In the joint pretrial statement, which was made a part of the pretrial conference order by reference, one of the issues was stated to be: ''Have proper demand and notice of protest been made upon Defendant?'' As has been noted, it appears that the court found in favor of the plaintiffs as to that issue. But, in any event, as to that matter the defendant Gordon could not prevail. The uncontradicted evidence is that he was the person who spoke with Mr. Engelman on behalf of both Trailer Park Enterprises, Inc., and himself with respect to the matter of the payment of the notes. In view of his statement that the notes would be paid, his subsequent statement that they would not be paid when due because of Mr. Schwimmer's domestic problem, and his denial of personal liability on his part, any further action on the part of the plaintiffs would have been useless. The reasoning of this court in *Marsh Wall Products, Inc.* v. *Henry Marcus Building Specialties,* 162 Cal.App.2d 371, at page 379 [328 P.2d 259], is apropos: ''In his answer, Altman denied any liability on the notes or the account. It is clear from his answer that if a demand had been made it would have been refused. In *Roadman* v. *Traeger,* 5 Cal.App.2d 749 [43 P.2d 564], it was held (p. 750) that 'where it is plain from the answer' that a demand would have been refused, a defendant may not object that no demand was made.'' (See also *Katz* v. *Haskell,* 196 Cal.App.2d 144, 150 [16 Cal.Rptr. 453].)

Contrary to the determination of the trial court, none of the provisions of sections 580a, 580b and 580d of the Code of Civil Procedure constitute a defense to the plaintiffs'

causes of action. (*Lange* v. *Aver*, 241 Cal.App.2d 793 [50 Cal. Rptr. 847] ; *Stephenson* v. *Lawn, supra,* 155 Cal.App.2d 669.) As stated in the *Stephenson* case (p. 671) : ''As previously noted, this is not an action against the original maker or the party primarily liable. It is a suit against the defendants Lawn on their separate liability as endorsers and hence was a separate and a distinct obligation and one which can in no way be construed as one for a deficiency judgment. As the court noted in *Hatch* v. *Security-First Nat. Bank,* 19 Cal.2d 254 [120 P.2d 869], the provisions of the Code of Civil Procedure above noted [sections 580b and 580d] have to do solely with actions for recovery of deficiency judgments on the principal obligation after sale under trust deed as distinguished from an endorser's obligation. Thus, the only person coming within the protective provisions of those sections is the principal debtor.''

The judgment is reversed.

Shinn, P. J., and Kaus, J., concurred.

A petition for a rehearing was denied June 20, 1966, and the judgment was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied July 21, 1966.