645 F.2d 794
 8 Bankr.Ct.Dec. 227, Bankr. L. Rep. P 68,320
 In the Matter of ESGRO, INC., a California Corporation, Debtor.
TOYS "R" US, INC., Cross-Appellant and Appellee,
v.
ESGRO, INC., California Wholesale Electric Co., Inc.,
Cross-Appellees and Appellants.
 Nos. 79-3267, 79-3349.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 3, 1981.
Decided May 18, 1981.
 
 1
 Marc A. Levinson, Sidley & Austin, Los Angeles, Cal., for cross-appellant and appellee.
 
 
 2
 Arthur L. Sherwood, Los Angeles, Cal., for cross-appellees and appellants.
 
 
 3
 Appeal from the United States District Court for the Central District of California.
 
 
 4
 Before FLETCHER and CANBY, Circuit Judges, and SOLOMON*, District Judge.
 
 SOLOMON, Senior District Judge:
 
 5
 The district court held that the trustees in bankruptcy of Interstate Stores, Inc.[1] (White Front) are entitled to set off their claims against Esgro, Inc. (later known as California Wholesale Electric Company) with Esgro's claims against White Front. Esgro appeals. White Front cross-appeals from the district court's ruling that the attorney's fees awarded White Front against Esgro in a state court action are provable in Esgro's bankruptcy proceedings.
 
 
 6
 White Front operated discount department stores on the west coast. Esgro rented space from White Front and operated camera and jewelry departments in White Front stores. In 1971, Esgro and White Front entered into an agreement by which Esgro would operate residential interior departments in the stores. The agreement provided for attorney's fees to the prevailing party if an action were filed. In 1972, White Front agreed to purchase Esgro's inventory in the camera and jewelry departments.
 
 
 7
 In February 1973, White Front filed an action in the Los Angeles County Superior Court against Esgro for unpaid rent. In the following month, Esgro filed a Chapter XI bankruptcy petition and obtained leave of the bankruptcy court to continue with its defense of the action for unpaid rent. White Front filed a proof of claim for the unpaid rent in Esgro's bankruptcy proceedings.
 
 
 8
 Thereafter, White Front filed a Chapter X bankruptcy petition and obtained permission to continue its state court action against Esgro. Esgro made claims in the White Front Chapter X proceedings which were not asserted in the state court action.
 
 
 9
 Both Esgro's and White Front's arrangements have been confirmed but the proceedings remain open to resolve the claims between the two entities.
 
 
 10
 In March, 1977, the state court awarded White Front $1,374,683 in back rent and $160,000 in attorney's fees against Esgro. Esgro appealed. White Front, nevertheless, petitioned for the allowance and payment of its claim.
 
 
 11
 The bankruptcy court ruled that even though the state court judgment was not final because of the appeal, the judgment was significant evidence on the White Front claim. It held that attorney's fees awarded White Front in the state court action were a "part of White Front's claim, along with the principal portion of the judgment." This meant that they were both provable and dischargeable in bankruptcy. The bankruptcy court also held that Esgro's (and its subsidiaries') claims against White Front were mutual and could therefore be set off against White Front's state court judgment against Esgro.
 
 
 12
 The state court judgment against Esgro for unpaid rent was affirmed on appeal. Shortly thereafter, the superior court awarded White Front an additional $49,811 for attorney's fees on appeal.
 
 
 13
 Both parties appealed the bankruptcy court's order to the district court. The district court affirmed.
 
 
 14
 Esgro asserts the following claims against White Front: (1) $10,432 for a check payable to Esgro that White Front cashed; (2) $59,975 for Esgro customer contracts that White Front collected; (3) $137,246 for plumbing and electrical supplies delivered to White Front and; (4) $75,000 for the camera and jewelry inventory.
 
 
 15
 Esgro contends that White Front owes these debts to Esgro's subsidiaries; therefore, Esgro's obligation to pay the state court judgment and White Front's debts are not mutual and may not be set off. Esgro also contends that a debt owed by a parent corporation and a debt owed to one of the parent's subsidiaries are not mutual if the two corporations are separate entities.
 
 
 16
 Section 68a of the Bankruptcy Act, codified in former 11 U.S.C. § 108(a),[2] provides that "(i)n all cases of mutual debts or credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other...." "(T)o be mutual, the debts or credits must be in the same right and between the same parties, standing in the same capacity." 4 Collier on Bankruptcy, P 64.04(2.01) at 867 (14th ed. 1975).
 
 
 17
 The district court found that the dealings between the White Front parent and the Esgro parent made the debts mutual. This is not an alter ego finding, and Esgro's reliance on cases on the separateness between a corporate parent and its subsidiary is misplaced. Nor does anything in the record cast doubt upon the conclusion of the bankruptcy Judge, upheld by the district court, that the relationship between Esgro and White Front was purely of a commercial nature and that no characteristics of a fiduciary obligation existed.
 
 
 18
 The evidence amply supports the court's finding. Esgro filed a Chapter XI petition for itself, but the court approved a corporate reorganization which consolidated the subsidiaries with Esgro. Esgro filed a proof of claim in White Front's proceedings for itself and its subsidiaries because, as the claim states, "the Debtor has accounted for the liabilities set forth in one single set of accounts, in like manner as if all sums were owed to Esgro Inc. alone." The parties settled their claims on the camera and jewelry inventory without regard to whether the debts were owed by or to subsidiaries.
 
 
 19
 Esgro contends that the debts cannot be set off because White Front acted as a fiduciary when it collected and retained these amounts but Esgro merely owes a "simple debt." Under Section 68a, there is no mutuality "when the liability of the one claiming a set-off arises from a fiduciary duty or is in the nature of a trust...." 4 Collier on Bankruptcy P 68.04(2.1) at 872-73 (14th ed. 1975). Whether a trust will be imposed in a bankruptcy proceeding is governed by state law. Elliott v. Bumb, 356 F.2d 749, 753 (9th Cir.), cert. denied, 385 U.S. 829, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966). Section 2224 of the California Civil Code provides:
 
 
 20
 One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.
 
 
 21
 White Front, when it factored or collected $59,975 of customer contracts, acted as Esgro's agent for collection but retained the proceeds. White Front did not "gain" the contracts as the result of "fraud, accident ... or other wrongful act...." Therefore, no constructive trust can be imposed on these proceeds. See In re Bruce Farley Corp., 612 F.2d 1197 (9th Cir. 1980). The same is true of White Front's cash sales to third parties of the camera and jewelry inventory and the plumbing and electrical supplies.
 
 
 22
 The check for $10,487, payable to Esgro, Inc., dba White Front Camera and Jewelry Department was delivered to White Front by mistake. White Front cashed the check and retained the proceeds. Under California Civil Code Section 2224, White Front is an involuntary trustee of this check for the benefit of Esgro.
 
 
 23
 Esgro has not, however, attempted to trace these funds. As we said in Elliott v. Bumb, supra at 754, "Generally such burden falls upon the beneficiary of a trust." In Elliott, a bankrupt seller of money orders failed to segregate sufficient funds to honor all money orders. A state statute provided that a statutory trust would be imposed on all funds needed to pay the money orders. We stated that even though "state law governs the determination of whether a beneficiary has sufficiently identified trust property, ... '(t)here is the further question, and this is a federal one: what is the distribution contemplated by the Bankruptcy Act in the situation at bar?' " Id. We then held that insofar as the statute would establish a trust on commingled funds, it was "in conflict with the federal bankruptcy scheme" and "cannot be given effect...." Id. at 755.
 
 
 24
 The Fifth Circuit applied Elliott to a state created constructive trust. It found that the state law was contrary to the federal bankruptcy law and could not be enforced to create a trust for commingled funds. In re Kennedy & Cohen, Inc., 612 F.2d 963 (5th Cir.) cert. denied, --- U.S. ----, 101 S.Ct. 103, 66 L.Ed.2d 38 (1980).
 
 
 25
 This analysis is applicable here. Even if California imposes a trust on commingled funds,[3] this trust cannot be enforced in a federal bankruptcy proceeding.
 
 
 26
 We hold that Esgro is a general creditor of White Front's estate on all debts, that there is mutuality under Section 68a, and that the debts of each may be set off against the other.
 
 
 27
 In its cross appeal, White Front argues that the court erred in deciding that the attorney's fees awarded to White Front in the state court action were provable in Esgro's bankruptcy proceedings. White Front contends that Esgro's liability was contingent because it had appealed and therefore, under Section 57d of the Bankruptcy Act, codified in former 11 U.S.C. § 93(d), the ultimate attorney's fees were not reasonably estimable. There is no merit in this contention.
 
 
 28
 A contingent claim is provable unless it is "deemed" not provable because it is not allowable under section 57d. Bankruptcy Act § 63d, codified in former 11 U.S.C. § 103(d). A claim is not allowable under Section 57d "... if the court should determine that it is not capable of liquidation or estimation would unduly delay the administration of the estate." A claim is too contingent if liability or the amount claimed "depend(s) upon the exercise of choice by persons beyond the control of the claimant or upon the success in contests between people." 1 Cowans, Bankruptcy Law and Practice 233, § 198 (2d ed. 1978).
 
 
 29
 One of the primary goals of the Bankruptcy Act is "to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." Williams v. United States Fidelity & Guaranty Co., 236 U.S. 549, 554-55, 35 S.Ct. 289, 290, 59 L.Ed. 713 (1915). The Court, therefore, adopted "a leaning toward" attitude on finding claims to be provable. Brown v. O'Keefe, 300 U.S. 598, 606, 57 S.Ct. 543, 548, 81 L.Ed. 827 (1937).
 
 
 30
 We balanced these considerations in Hartman v. Utley, 335 F.2d 558 (9th Cir. 1964), noting that claims for stipulated attorney's fees should not be disallowed because bankruptcy intervened before any legal services were rendered.
 
 
 31
 Here, the district court applied Hartman and held that:
 
 
 32
 The contingency was not out of the control of the parties. Liability and the amount thereof were reasonably estimable. The Superior Court judgment was given ten months after the Confirmation of Arrangement. White Front does not claim that the delay imposed a hardship on it or even that the delay was inconvenient. Its sole argument is that the amount of attorney's fees was subject to fluctuation because of the appeals and that there was a remote possibility that Esgro's appeal would be successful, relieving it of liability altogether. The contingency here is minor. Given the policy of favoring provability, there is no reason not to find these fees provable.
 
 
 33
 We agree.
 
 
 34
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Gus J. Solomon, Senior United States District Judge, for the District of Oregon, sitting by designation
 
 
 [1]
 Toys "R" Us, Inc., the reorganized debtor, acquired all of the assets and rights of its predecessor, Interstate Stores, and was substituted as cross-appellant and appellee for Joseph R. Crowley and Herbert B. Siegel, Reorganization Trustees for Interstate Stores, Inc., formerly known as Interstate Department Stores, Inc
 
 
 [2]
 The new Bankruptcy Code, 11 U.S.C. § 101 et seq., became effective on October 1, 1979. Because this case was filed prior to that date, it is governed by the Bankruptcy Act, codified in former 11 U.S.C. § 1 et seq
 
 
 [3]
 In addition to California Civil Code Section 2224, Esgro argues that California Civil Code Section 2223 applies. This section provides that: "One who wrongfully detains a thing is an involuntary trustee thereof; for the benefit of the owner."